FILED
COURT OF APPEALS
DIVISION II

2014 SEP 16 AM 10: 00

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44594-8-II |
| Appellant, | (Cons. with No. 44610-3-II) |
| v. | |
| ANTHONY KOZEY, | PUBLISHED OPINION |
| Respondent. | |

BJORGEN, A.C.J. — The State appeals Anthony Kozey's sentences for two felony violations of domestic violence no-contact orders. The State argues that the trial court erred by interpreting RCW 9.94A.030(20) as conjunctively incorporating the definitions of "domestic violence" found in RCW 10.99.020 and RCW 26.50.010. Agreeing with the State, we reverse and remand for resentencing consistently with a disjunctive interpretation of the definition of "domestic violence" in RCW 9.94A.030(20).

## FACTS

In violation of a no-contact order, Kozey contacted his longtime girl friend, Chalene Johnston, on at least two occasions in September 2011. Kozey was convicted of gross misdemeanor no-contact order violations for these offenses. His sentences included a post-conviction no-contact order that again forbad him from contacting Johnston.

In spite of this order, Johnston called Kozey in November 2011 and asked for help transporting and pawning some power tools. A police officer investigating a different matter at the pawn shop saw Kozey and Johnston together, discovered the no-contact order after running the plates of the vehicle they used, and arrested Kozey for violating the order. Because Kozey

1

already had two convictions for no-contact order violations, the State charged him with a felony for the new violation under RCW 26.50.110(5).

Johnston again initiated contact with Kozey in February 2012 while he was out on bail and awaiting trial for the November 2011 no-contact order violation. As a result, Kozey visited Johnston and their children at her grandmother's house. During the visit, one of Johnston's grandmother's checks disappeared, and Kozey later cashed it. Police learned of Kozey's violation of the no-contact order when the grandmother reported the theft of the check, and the State charged Kozey with another felony for the no-contact order violation.

During pretrial proceedings, Kozey argued that RCW 9.94A.030(20) defines "domestic violence" by conjunctively incorporating the definitions of "domestic violence" codified at RCW 10.99.020 and RCW 26.50.010, thereby requiring proof of both definitions.[1,2] Because the parties agreed that Kozey did not violate the no-contact order with the type of conduct necessary to constitute domestic violence under RCW 26.50.010, Kozey maintained that the State had not pleaded and could not prove domestic violence under its definition in RCW 9.94A.030(20), thus

---

[1] As relevant, RCW 10.99.020(5) states that
> "[d]omestic violence" includes but is not limited to any of the following crimes when committed by one family or household member against another:
> . . . .
> (r) Violation of the provisions of a restraining order, no-contact order, or protection order restraining or enjoining the person.

[2] RCW 26.50.010(1) states that
> "[d]omestic violence" means: (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

precluding any enhanced sentence. The State argued that RCW 9.94A.030(20) disjunctively incorporated RCW 10.99.020 and RCW 26.50.010, such that conduct falling under either definition constituted domestic violence for purposes of the enhanced domestic violence penalties of the Sentencing Reform Act (SRA), chapter 9.94A RCW.

The trial court adopted Kozey's reading of RCW 9.94A.030(20) and entered findings of fact and conclusions of law to that effect. These conclusions prevented the State from seeking enhanced penalties under RCW 9.94A.525(21).

After a bench trial on stipulated facts, the trial court found Kozey guilty of both the November 2011 and the February 2012 no-contact order violations. Based on its interpretation of the definition of "domestic violence" in RCW 9.94A.030(20), the trial court calculated his offender score as zero for the November 2011 felony no-contact order violation and as one for the February 2012 felony no-contact order violation. The trial court imposed a standard 12-month term of incarceration for the November 2011 violation and a standard 14-month term of incarceration for the February 2012 violation, ordering that Kozey serve the terms concurrently.

The State appeals, asking us to reverse Kozey's sentence and to remand the matter for resentencing consistent with a disjunctive interpretation of the definition of "domestic violence" in RCW 9.94A.030(20).

## ANALYSIS

The parties contest the same issue they contested before the trial court: whether the word "and" in RCW 9.94A.030(20) conjunctively or disjunctively joins the definitions of "domestic

3

violence" found in RCW 10.99.020 and RCW 26.50.010 for purposes of enhancing sentences for crimes involving domestic violence.

We review a statute's meaning de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our "fundamental objective" when interpreting a statute is to "ascertain and carry out the [l]egislature's intent." *Campbell & Gwinn*, 146 Wn.2d at 9. Washington's courts have long recognized that, despite the common, conjunctive usage of "and," service of the legislature's intent may require reading the word disjunctively. *State v. Keller*, 98 Wn.2d 725, 728-31, 657 P.2d 1384 (1983); *see State v. Tiffany*, 44 Wash. 602, 603-05, 87 P. 932 (1906) (discussing the interchangeability of "and" and "or"). To determine if the legislature intended "and" to read disjunctively, we must apply general rules of statutory interpretation. *See Tiffany*, 44 Wash. at 603-04 (quoting G.A. Endlich, A COMMENTARY ON THE INTERPRETATION OF STATUTES § 2 (1888)).

Under those rules, we first attempt to discern the plain meaning of the legislature's use of "and" from the text of the provision at issue and any related provisions which disclose legislative intent about the provision in question. *See Campbell & Gwinn*, 146 Wn.2d at 11-12; *Tiffany*, 44 Wash. at 603-04 (requiring courts to examine the "context" of the legislature's use of "and" or "or"). If, after this plain meaning analysis, the statute remains "susceptible to more than one reasonable meaning," it is ambiguous, and we resort to aids to construction, including legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12.

4

A.      The Statutory Scheme

Under RCW 9.94A.525(21), the offender score used in sentencing is increased due to certain prior convictions when "the present conviction is for a felony domestic violence offense where domestic violence as defined in RCW 9.94A.030 was plead[ed] and proven." Among the prior convictions triggering this enhancement is a felony violation of a no-contact order conviction. RCW 9.94A.525(21)(a). Kozey was convicted of two felony violations of a no-contact order: one in November 2011 and one in February 2012. Under RCW 9.94A.589(1)(a),

> whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score.

Thus, Kozey's felony convictions are among the prior convictions for which the offender score may be enhanced under RCW 9.94A.525(21)(a). With that, the remaining issue is whether each present felony conviction is one "where domestic violence as defined in RCW 9.94A.030 was plead[ed] and proven." RCW 9.94A.525(21).

RCW 9.94A.030(20) states simply that "'[d]omestic violence' has the same meaning as defined in RCW 10.99.020 and 26.50.010." RCW 10.99.020(5), in turn, states that "'[d]omestic violence' includes but is not limited to any of the following crimes when committed by one family or household member against another." The nonexclusive list includes violent crimes, such as assault, kidnapping, and rape; property crimes, such as criminal trespass and malicious mischief; and other miscellaneous crimes, including the "[v]iolation of the provisions of a restraining order, no-contact order, or protection order restraining or enjoining the person." RCW 10.99.020(r).

5

RCW 26.50.010(1), the second statute referenced in RCW 9.94A.030(20), states that

"[d]omestic violence" means: (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

RCW 26.50.010 thus defines an offense as a domestic violence offense when it is an assault, sexual assault or stalking committed by one family or household member against another family or household member.

The defendant's conduct in November 2011 and February 2012 falls under the definition of "domestic violence" of RCW 10.99.020, but not that of RCW 26.50.010. Thus, the validity of the challenged sentence enhancement hangs on whether the definitions in these statutes are read conjunctively or disjunctively.

B.    The Plain Meaning of "and" in RCW 9.94A.030(20)

The plain meaning analysis begins with the text of RCW 9.94A.030(20). As Kozey notes, the legislature used the term "and" in the provision, and we presume "and" functions conjunctively. *Tiffany*, 44 Wash. at 603-04. On the other hand, our courts have recognized that "and" must sometimes be given disjunctive force to preserve legislative intent. *See Keller*, 98 Wn.2d at 728-31; *Tiffany*, 44 Wash. at 603-05; *Bullseye Distrib., LLC v. Wash. State Gambling Comm'n*, 127 Wn. App. 231, 239-40, 110 P.3d 1162 (2005). The plain meaning analysis also requires us to go beyond the text of RCW 9.94A.030(20) and to examine the text of related statutes. *Campbell & Gwinn, LLC*, 146 Wn.2d at 11-12. RCW 9.94A.030(20) incorporates

6

RCW 10.99.020 and RCW 26.50.010, making them related statutes. *See Jametsky v. Olsen*, 179 Wn.2d 756, 766, 317 P.3d 1003 (2014).

We begin by noting the way in which RCW 9.94A.030(20) refers to these related statutes. RCW 9.94A.030(20) does not state that conduct must meet the requirements of both RCW 10.99.020 and RCW 26.50.010 to count as domestic violence. Rather, it states domestic violence "has the same meaning as defined in RCW 10.99.020 and 26.50.010." RCW 9.94A.030(20).

RCW 10.99.020 sets out a nonexclusive list of specific crimes the legislature has deemed to be domestic violence when committed by one family or household member against another. RCW 26.50.010 eschews a specific list of crimes and instead sets out the types of acts the legislature has determined generally constitute domestic violence when perpetrated by one family member against another. With these differing conceptual approaches, there is no "same meaning" shared by both RCW 10.99.020 and RCW 26.50.010. Instead, RCW 9.94A.030(20) most logically reads as using RCW 10.99.020 to set out per se crimes of domestic violence and RCW 26.50.010 to define when a crime otherwise omitted from the nonexclusive list is nonetheless also deemed to involve domestic violence. For example, RCW 10.99.020 omits crimes such as third degree rape and child molestation, which would fall under the definition of "domestic violence" in RCW 26.50.010. Reading RCW 9.94A.030(20) to require conduct simultaneously to meet both RCW 10.99.020 and RCW 26.50.010 in order to constitute domestic violence for sentence enhancement purposes would forfeit this logic.

7

No. 44594-8-II
(Cons. With No. 44610-3-II)

Although involving different types of statutes, our conclusion is consistent with the reasoning in *Mount Spokane Skiing Corp. v. Spokane County*, 86 Wn. App. 165, 171, 936 P.2d 1148 (1997). In that appeal those challenging a public authority pointed out that RCW 35.21.730(4) authorized a public authority to

> (1) administer and execute federal grants or programs; (2) receive and administer private funds, goods or services for any lawful public purpose; (3) and perform any lawful public purpose or function.

*Mount Spokane Skiing Corp.*, 86 Wn. App. at 171. Because these elements were connected with the word "and," the challengers argued that a public authority must perform all three functions to be valid. Division Three of our court disagreed. It held that based on common sense and legislative intent, the plain meaning of the terms was that, despite the presence of "and," the public authority had to carry out only one of the listed functions. *Mount Spokane Skiing Corp.*, 86 Wn. App. at 174.

Turning now to RCW 10.99.020 and RCW 26.50.010 themselves, their presence virtually compels adoption of the disjunctive reading of RCW 9.94A.030(20), since the conjunctive reading would effectively rob one of them of any effect. As discussed above, RCW 10.99.020 defines "domestic violence" through a nonexclusive list of crimes; RCW 26.50.010 defines "domestic violence" through a list of qualifying behaviors. If the conjunctive reading of RCW 9.94A.030(20) were correct, then the list of crimes found in RCW 10.99.020 would have meaning only where the offender commits an act encompassed by RCW 26.50.010. The reference to RCW 10.99.020 would be superfluous.

8

In contrast, as noted above, a disjunctive reading gives meaning to both of the cross-references in RCW 9.94A.030(20): RCW 10.99.020 defines the nonexclusive list of per se crimes of domestic violence and RCW 26.50.010 tells the court how to determine if a crime not on the list constitutes domestic violence. The examination of related statutes therefore requires a disjunctive reading of RCW 9.94A.030(20).[3]

Further, these same considerations show that reading RCW 9.94A.030(20) conjunctively quickly descends into self-contradiction. The conjunctive interpretation of "and" in RCW 9.94A.030(20) would mean that the requirements of *both* referenced statutes must be met before a crime can be deemed domestic violence. As just shown, requiring both statutes to be met reduces the definition of domestic violence to that of RCW 26.50.010 only. Thus, the conjunctive interpretation defeats itself by making RCW 10.99.020 superfluous. When our court interprets a statute, we attempt to avoid interpretations that render statutory language "meaningless or superfluous." *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 809, 16 P.3d 583 (2001). A disjunctive reading, therefore, is the only way to give meaning to all the language in RCW 9.94A.030(20).

---

[3] At trial Kozey suggested that a conjunctive reading gave meaning to RCW 10.99.020 by ensuring that only domestic violence *crimes* were punished under the SRA. However, the definition of "domestic violence" in RCW 9.94A.030(20) informs the penalty provisions in RCW 9.94A.525(21), which punish an offender more severely for a current domestic violence conviction based on past domestic violence convictions. Due process forbids the State from convicting an offender for something that is not a crime. *Johnson v. United States*, 805 F.2d 1284, 1288 (7th Cir. 1986). RCW 10.99.020, therefore, does not serve the purpose Kozey ascribes to it; the state and federal constitutional due process clauses already function to ensure that the State can seek to enhance a domestic violence offender's punishment only for criminal acts.

9

Finally, a conjunctive reading of RCW 9.94A.030(20) would defeat the legislature's intent in enacting the statute. The statement of intent accompanying the 2010 domestic violence amendments reads:

> The legislature intends to improve the lives of persons who suffer from the adverse effects of domestic violence and to require reasonable, coordinated measures to prevent domestic violence from occurring. The legislature intends to give law enforcement and the courts better tools to identify violent perpetrators of domestic violence and hold them accountable. The legislature intends to: Increase the safety afforded to individuals who seek protection of public and private agencies involved in domestic violence prevention; improve the ability of agencies to address the needs of victims and their children and the delivery of services; upgrade the quality of treatment programs; and enhance the ability of the justice system to respond quickly and fairly to domestic violence. In order to improve the lives of persons who have, or may suffer, the effects of domestic violence the legislature intends to achieve more uniformity in the decision-making processes at public and private agencies that address domestic violence by reducing inconsistencies and duplications allowing domestic violence victims to achieve safety and stability in their lives.

LAWS OF 2010, ch. 274, § 101. Kozey correctly notes that this statement of intent speaks, in part, to enabling law enforcement and the courts to respond to violent perpetrators of domestic violence. He claims that this shows the legislature intended to capture only the type of violent behavior defined as "domestic violence" in RCW 26.50.010. The statement of legislative intent, though, also generally speaks to "prevent[ing] domestic violence from occurring" and "[i]ncreas[ing] the safety afforded to individuals who seek protection" from law enforcement or the courts. LAWS OF 2010, ch. 274, § 101. One way the 2010 amendment accomplishes these goals is to deter contact between a victim and an offender by stiffening the penalties associated with violations of a protection or no-contact order. Reading RCW 9.94A.030(20) disjunctively

10

preserves this legislative purpose by capturing the wider range of behaviors that the legislature has already deemed to constitute domestic violence in RCW 10.99.020 and RCW 26.50.010.

In ordinary English, it may seem incongruous that the plain meaning of "and" could be taken as creating a disjunctive series of items in a list. Our job in interpreting a statute, though, is not the mapping of popular usage, but the determination of legislative intent. As just discussed, the plain meaning of the two related statutes linked by "and" in RCW 9.94A.030(20) leaves little doubt that in this specific context, the legislature intended domestic violence to include the conduct described in either RCW 10.99.020 or RCW 26.50.010. Because the term is not ambiguous in this context, further construction is not needed.

C.   Ambiguity and Extrinsic Evidence of Legislative Intent

Alternatively, even if RCW 9.94A.030(20) were deemed ambiguous, Kozey's challenge would still fail. Under *Campbell & Gwinn*, 146 Wn.2d at 12, we would resolve the ambiguity by resorting to aids to construction, including legislative history. This examination shows even more forcefully that the legislature used "and" disjunctively in RCW 9.94A.030(20).

1. Legislative History

We may use legislative history as evidence of the legislature's intent where the plain meaning of a statute is ambiguous. *Cockle*, 142 Wn.2d at 808. Here, the legislative history suggests a disjunctive reading of RCW 9.94A.030(20)'s use of "and."

In 2010 the legislature enacted an extensive array of new measures designed to provide enhanced punishment for domestic violence offenders. *See* LAWS OF 2010, ch. 274, § 101, 401-07. Among these new provisions were RCW 9.94A.030(20) and RCW 9.94A.525(21), measures

11

No. 44594-8-II
(Cons. With No. 44610-3-II)

at the heart of the issue raised by this appeal. The bill proposing the 2010 legislation, ESHB 2777, originated as an attorney general proposal to the legislature. *See State v. Sweat*, 174 Wn. App. 126, 131 n.5, 297 P.3d 73 (2013), *aff'd*, 180 Wn.2d 156 (2014). The proposal asked the legislature to amend "[RCW] 9.94A.030 . . . to add 'domestic violence,' defined as a criminal offense committed between defendant and a victim having a relationship as defined in RCW 10.99.020 *or* 26.50.010." WASHINGTON STATE ATTORNEY GENERAL – ROB MCKENNA, AG REQUEST LEGISLATION – 2009 SESSION: SUPPORTING LAW ENFORCEMENT: DOMESTIC VIOLENCE SANCTIONS, at 1 (2009) (AG PROPOSAL) (emphasis added).[4] The proposal also suggested amending RCW 9.94A.525 to increase the scoring for prior domestic violence convictions.

The sentencing amendments the legislature enacted in 2010 tracked the amendments proposed by the attorney general in function, but the amendments used "and" in the place of "or" when adding what became RCW 9.94A.030(20). *Compare* LAWS OF 2010, §§ 401, 403 *with* AG PROPOSAL at 1 (proposing amendments to RCW 9.94A.030 and RCW 9.94A.525). The intended effect of this change, if any, is plain from the surrounding circumstances. The legislation implements both the attorney general's proposal and the vigorous statement of intent in LAWS OF 2010, ch. 274, § 101, cited above. A conjunctive reading of RCW 9.94A.030(20) narrows the scope of its protections and starkly contradicts the statement of legislative intent to "prevent domestic violence" and to "[i]ncrease the safety afforded to individuals who seek protection."

---

[4] The AG request is located at:
http://atg.wa.gov/uploadedFiles/Home/Office_Initiatives/Legislative_Agenda/2009/ DV_Sanctions%20(20-sided).pdf.

12

LAWS OF 2010, ch. 274, § 101. The disjunctive reading of RCW 9.94A.030(20) is necessary to preserve that intent.[5]

2. Principles of Statutory Construction

Our court may also use principles of statutory construction to determine legislative intent when a statutory provision remains ambiguous after a plain meaning analysis. *Cockle*, 142 Wn.2d at 808. Here, the relevant canons of construction point without question to a disjunctive reading of RCW 9.94A.030(20).

When our court interprets a statute, we attempt to avoid rendering statutory language "meaningless or superfluous." *Cockle*, 142 Wn.2d at 809. As shown in the plain meaning analysis above, reading RCW 9.94A.030(20)'s list conjunctively would make its reference to RCW 10.99.020 superfluous. A disjunctive reading, therefore, is the only way to give meaning to all the language in RCW 9.94A.030(20).

Kozey contends that chapter 9.94A RCW is a penal statute and must be strictly construed, requiring us to reject the State's interpretation of RCW 9.94A.030(20). Strict construction cannot defeat the intent of the legislature. *State v. Rinkes*, 49 Wn.2d 664, 667, 306 P.2d 205 (1957). Here, even if the plain meaning of the statute is ambiguous, the legislature's intent is not, after considering its statement of intent, the history of the amendments that added RCW

---

[5] We recognize that, under the canons of construction, the change from "or" to "and" could also be taken as a sign of a change in legislative intent. However, the purpose of the 2010 legislation, and its consistency with the attorney general's proposal, clearly support the much more direct message of legislative intent: that the disjunctive reading of RCW 9.94A.030(20) should be preserved.

No. 44594-8-II
(Cons. With No. 44610-3-II)

9.94A.030(20), and the need to give effect to all the portions of RCW 9.94A.030(20). Construing RCW 9.94A.030(20) as Kozey advocates would defeat this intent, and we decline his invitation.

Kozey next invokes the rule of lenity and contends that, because RCW 9.94A.030(20)'s meaning is, at best, ambiguous, the rule requires that we adopt his reading of RCW 9.94A.030(20). The rule of lenity applies to the SRA and it requires that, where a statutory provision remains ambiguous after we exhaust all means of attempting to ascertain the legislature's intent, we interpret the statute in the manner favorable to the defendant. *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991). Even if RCW 9.94A.030(20) is assumed ambiguous after the plain meaning inquiry, our examination of legislative history and application of the principles of statutory construction clarify how that ambiguity is resolved, leaving no room for application of the rule of lenity.

We reverse Kozey's sentence and remand for resentencing consistently with a disjunctive interpretation of the definition of "domestic violence" in RCW 9.94A.030(20).

BJORGEN, A.C.J.

We concur:

HUNT, J.

LEE, J.

14