IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40993-7-III |
| | ) | |
| Respondent, | ) | ORDER: (1) GRANTING IN PART |
| | ) | MOTION FOR RECONSIDERATION, |
| v. | ) | AND (2) WITHDRAWING OPINION |
| | ) | |
| M.H.M.-J. | ) | |
| | ) | |
| Appellant. | ) | |

THE COURT has considered appellant M.H.M.-J.'s motion for reconsideration of this court's December 18, 2025, opinion; and the record and file herein.

IT IS ORDERED that the motion for reconsideration is granted in part.

IT IS FURTHER ORDERED that this court's December 18, 2025, opinion is withdrawn and a new opinion is filed herewith.

PANEL: Judges Murphy, Fearing, and Cooney.

FOR THE COURT:

ROBERT LAWRENCE-BERREY
Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40993-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| M.H.M.-J. | ) | |
| | ) | |
| Appellant. | ) | |

MURPHY, J. — On October 29, 2024, M.M.-J. was charged with "intimidat[ing an] administrator, teacher, classified employee, or student," specifically a school security coordinator. Clerk's Papers (CP) at 1. M.M.-J. was found guilty as charged after a bench trial. He was subsequently sentenced to 2 days of confinement, 16 hours of community service, and 12 months of community supervision.

M.M.-J. now appeals the juvenile court's order on adjudication and disposition, alleging his conviction was not supported by sufficient evidence. Specifically, M.M.-J. claims that the State failed to prove beyond a reasonable doubt that (1) the school security coordinator was a "'classified employee,'" and (2) M.M.-J. issued a "'true threat.'" Br. of the Appellant at 2. We disagree and affirm.

FACTS

M.M.-J. was a student at Centralia High School. During school hours, M.M.-J. was observed vaping in the bathroom by Michael Lowrey, who was employed by the

school district as the security coordinator. Smoking at school is a violation of the rules.

While Lowrey was escorting M.M.-J. to the school's disciplinary center, M.M.-J.

repeatedly threatened Lowrey.

M.M.-J. was charged under RCW 28A.625.100 with one count of intimidating an

administrator, teacher, classified employee, or student.

M.M.-J.'s case proceeded to a juvenile bench trial. Lowrey and the school's

principal, Scot Embrey, were the only witnesses to testify at trial. M.M.-J. exercised his

constitutional right not to testify.

*Testimony of Michael Lowrey*

Michael Lowrey testified about his prior experience as a police officer, his current

position as the security coordinator for the school district, and the incident that occurred

with M.M.-J.

He described that after he witnessed M.M.-J. vaping, M.M.-J. began to walk

toward Lowrey. Lowrey put his hand up and told M.M.-J. that he was escorting him to

the Go Center, where the Centralia High School's disciplinary center is located. M.M.-J.

told Lowrey that he would not accompany him and walked into Lowrey's hand stating,

"You better move out of my way." Rep. of Proc. (RP) (Jan. 7, 2025) at 18. Lowrey got on

his radio and asked for assistance with the escort.

M.M.-J. walked away, and Lowrey followed. As he followed, M.M.-J. made several comments to Lowrey, calling him "a bitch ass n[*****], that [Lowrey] was a piece of shit, he ought to beat [Lowrey's] ass," and that he was not afraid of Lowrey. RP (Jan. 7, 2025) at 19. Lowrey initially believed M.M.-J. was "just frustrated" and engaging in "trash talk." RP (Jan. 7, 2025) at 19, 21.

While the confrontation was happening, M.M.-J. and Lowrey walked past the school principal, Scot Embrey. Lowrey asked Embrey for assistance because M.M.-J. was "ramping up more and more." RP (Jan. 7, 2025) at 20. Embrey also began to follow. As the three walked nearer the Go Center, M.M.-J. stated, "I'm not going in there." He then put his finger in Lowrey's face and said, "I'm going to beat your ass" and called Lowrey "a bitch ass n[*****] over and over and over." RP (Jan. 7, 2025) at 20. Lowrey noted M.M.-J. was taller and heavier than he was.

Once M.M.-J. pointed his finger and got in Lowrey's face and began yelling, Lowrey no longer believed that M.M.-J. was merely "trash talk[ing]." RP (Jan. 7, 2025) at 21, 24. Lowrey instead felt "intimidated by a threat of force or violence," even "more so than when [he] was in law enforcement." RP (Jan. 7, 2025) at 24. Lowrey explained that he had more "tools available" to him when he was in law enforcement, such as the ability to call backup. RP (Jan. 7, 2025) at 24. He "had a gun, which [was] not going to be used," but did not have a taser, baton, or less lethal force device available for use. RP

3

No. 40993-7-III
*State v. M.H.M.-J.*

(Jan. 7, 2025) at 24.

*Testimony of Scot Embrey*

Centralia High School's principal, Scot Embrey, testified M.M.-J. used threatening phrases toward Lowrey, such as, "You better not put your hands on me, I'm going to knock your ass out, or some—some sort of—just a sort of threatening phrase." RP (Jan. 7, 2025) at 46. Embrey did not witness Lowrey do or say anything inappropriate during Lowery's interactions with M.M.-J.

Lowrey eventually left M.M.-J. with Embrey. Once Lowrey was gone, Embery observed M.M.-J.'s attitude shift from agitated and frustrated to emotionally upset and crying. M.M.-J. told Embrey that he did not want Lowrey putting "hands on [him]" and "kept referring to a situation that happened when M.M.-J. was really young, where Mr. Lowrey was—was supposedly at that point of time police officer with Centralia and—and came to his home or something like that." RP (Jan. 7, 2025) at 45.

*Trial court's determinations*

The juvenile court found the testimony of both Lowrey and Embrey credible.

Following this testimony, counsel proceeded with closing argument. Defense counsel argued that the State could not prove the element that Lowrey was a "classified employee" under Washington law. RP (Jan. 7, 2025) at 53-54. The juvenile court disagreed and ruled that the State met its burden beyond a reasonable doubt. M.M.-J. was

4

subsequently sentenced to 2 days of confinement, 16 hours of community service, and 12

months of community supervision.

Following the adjudication hearing, the juvenile court entered written findings of

fact and conclusions of law.

M.M.-J. now appeals. A Division Three panel considered this appeal without oral

argument after receiving an administrative transfer of the case from Division Two.

ANALYSIS

M.M.-J. argues that his conviction is not supported by sufficient evidence.

He claims that the State failed to prove beyond a reasonable doubt that (1) the school

security coordinator was a "'classified employee,'" and that (2) M.M.-J. issued a "'true

threat.'" Br. of the Appellant at 2.

We review de novo whether sufficient evidence supports a conviction. *See State v.*

*Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014). "'Evidence is sufficient to support an

adjudication of guilt in a juvenile proceeding if any rational trier of fact, viewing the

evidence in a light most favorable to the State, could have found the essential elements of

the crime beyond a reasonable doubt.'" *State v. Ware*, 111 Wn. App. 738, 741-42, 46

P.3d 280 (2002) (quoting *State v. Echeverria*, 85 Wn. App. 777, 782, 934 P.2d 1214

(1997)); *see also State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980).

M.M.-J. notes that because he is Latinx, "'adultification is real,'" meaning that "children of color are often seen as more adult, more dangerous, more blameworthy," and more deserving of harsher punishment. Reply Br. of Appellant at 5 n.1 (quoting *In re Pers. Restraint of Miller*, 21 Wn. App. 2d 257, 266, 505 P.3d 585 (2022)). With this acknowledgment in mind, we address the merits of M.M.-J.'s argument.

*"Classified employee"*

M.M.-J. argues that Lowrey was not a "classified employee" as that term is defined under RCW 28A.150.203(6), and, therefore, the State failed to prove every element of the charged crime beyond a reasonable doubt.

Statutory interpretation is a question of law we review de novo. *See In the Matter of the Adoption of T.A.W.*, 186 Wn.2d 828, 840, 383 P.3d 492 (2016) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). "The purpose of our inquiry is to determine legislative intent and interpret the statutory provisions to carry out its intent." *Id*.

In interpreting a statute, the "court looks first to its plain language." *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007) (citing *State v. J.P.,* 149 Wn.2d 444, 449, 69 P.3d 318 (2003)). If the plain language is subject to only one interpretation, then our inquiry ends because plain language does not require construction. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (citing *Armendariz*,

160 Wn.2d at 110). "If the statutory language is both plain and unambiguous, the meaning we give the statute must be derived from the statutory language itself." *T.A.W.*, 186 Wn.2d at 840 (citing *HomeStreet*, 166 Wn.2d at 451). "To ascertain the statute's plain meaning, we may examine (1) the entirety of the statute in which the disputed provision is found, (2) related statutes, or (3) other provisions within the same act." *Id.* (citing *Campbell & Gwinn*, 146 Wn.2d at 10). "If, after this inquiry, there is more than one reasonable interpretation of the plain language, then a statute is ambiguous and we may rely on principles of statutory construction, legislative history, and relevant case law to discern legislative intent." *State v. Dennis*, 191 Wn.2d 169, 173, 421 P.3d 944 (2018).

Under RCW 28A.635.100(1), "[i]t shall be unlawful for any person, singly or in concert with others, to intimidate by threat of force or violence any administrator, teacher, classified employee, or student of any common school who is in the peaceful discharge or conduct of his or her duties or studies."

A "classified employee" is "a person who is employed as a paraeducator and a person who does not hold a professional education certificate or is employed in a position that does not require such a certificate." RCW 28A.150.203(6). A "paraeducator" is "a classified public school or school district employee who works under the supervision of a certificated or licensed staff member to support and assist in providing instructional and other services to students and their families." RCW 28A.413.010(5).

7

M.M.-J. argues the term "classified employee" means "paraeducators and similar school employees who do not have . . . professional education certificate[s] but who work directly under someone who does." Br. of the Appellant at 14. M.M.-J. claims that Lowrey does not meet the definition of a "classified employee" because, as a school security coordinator, Lowrey does work under the supervision of a person with a professional education certificate or licensed staff member.

Here, the plain language of RCW 28A.150.203(6) is open to more than one interpretation. The statute mixes "and" and "or" without clear grouping, which creates uncertainty about who is included. Because there are no commas, parentheses, or other signals, it is unclear whether the "or" operates inside the second phrase only, or whether the "or" affects the entire sentence.

"For a statute to be ambiguous, two reasonable interpretations must arise from the language of the statute itself, not from considerations outside the statute." *Cerrillo v. Esparza*, 158 Wn.2d 194, 203-04, 142 P.3d 155 (2006). "While a statute is ambiguous if it is susceptible to two or more reasonable interpretations, we are not obliged to discern an ambiguity by imagining a variety of alternative interpretations." *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 608, 998 P.2d 884 (2000).

Since more than one reasonable interpretation arises from the language of RCW 28A.150.203(6), the statute is ambiguous and we may rely on principles of

8

statutory construction, legislative history, and relevant case law to discern legislative intent.

M.M.-J.'s proposed interpretation is inconsistent with the context of the statute. When a statute appears inconsistent, "our courts have recognized that 'and' must sometimes be given disjunctive force to preserve legislative intent." *State v. Kozey*, 183 Wn. App. 692, 698, 334 P.3d 1170 (2014). As written, RCW 28A.150.203(6) appears to be a drafting error. The legislature likely meant to cover two separate categories: (1) paraeducators or (2) any other employee who does not hold a professional education certificate or is employed in a position that does not require a certificate. Therefore, if the drafter wanted to include all noncertified staff, then the "and" is a mistake for "or." If so, then the "and" in RCW 28A.150.203(6) should be viewed as disjunctive.

Reviewing the legislative history is helpful to determining whether "and" should be conjunctive or disjunctive. As the State points out, when the legislature initially enacted this statute in 2009, the definition of "classified employee" was limited to the second clause. Under former RCW 28A.150.203(6) (2009), a "classified employee" was defined as "a person who does not hold a professional education certificate or is employed in a position that does not require such a certificate." The original intent was to include all noncertified staff.

9

In 2017, the legislature enacted new statutes, and amended others, in relation to paraeducators. Former RCW 28A.150.203(6) was amended to qualify the definition of "classified employee" as "a person who <u>is employed as a paraeducator and a person who</u> does not hold a professional education certificate or is employed in a position that does not require such a certificate." LAWS OF 2017, ch. 237, § 15. The only other amendment made to the definitional statute was to qualify "certified instruction staff" to mean "those persons employed by a school district who are nonsupervisory certificated employees within the meaning of RCW 41.59.020(8)*,* <u>except for paraeducators</u>." *Id.* There have been no further amendments to RCW 28A.150.230 since 2017.

It is doubtful that the legislature intended to narrow the definition of "classified employee" to only paraeducators. This would essentially exclude almost every nonteaching staff member, e.g., bus drivers, cafeteria workers, office staff, custodians, and security officers, positions that would not have been excluded prior to the statutory amendment. Rather, paraeducator is one type of classified employee that broadens the statute. We hold that the "and" in RCW 28A.150.203(6) was intended to be disjunctive to preserve legislative intent. Therefore, M.M.-J.'s argument that Lowrey was not a "classified employee" does not prevail.

M.M.-J. makes the additional argument that as school security coordinator, Lowrey's employment more properly falls under "safety and security staff" as defined in

RCW 28A.320.124(3)(a). He further argues that this definition includes the ability to contract with law enforcement and private security companies. RCW 28A.320.1242. Therefore, M.M.-J. claims that safety and security staff were intentionally omitted from the intimidation statute. This argument also does not prevail. As the State points out, Lowrey was not a contract employee from law enforcement. The record indicates that Lowrey was an employee of the school district, and, therefore, a classified employee.

Lastly, the State points out from a purely practical standpoint that school districts and employees do not use the statutory definition of "classified employee" advanced by M.M.-J. Br. of Resp't at 11 & n.2; see also HUMAN RESOURCES, CAREERS, WEBPAGE FOR FEDERAL WAY SCHOOL DISTRICT ("Classified positions include managers, supervisors, coordinators, specialists, secretaries, paraeducators, cashiers, cooks, lunchroom help, bus and delivery drivers, custodians, buyers, purchasers, and occupational and physical therapy assistants. Classified positions also include all technology, *security*, maintenance, Head Start and ECEAP positions.") (emphasis added), https://www.fwps.org/departments/humanresources/careers (last visited 10/17/25). Although not binding on this court, we find it persuasive that a school district defines a "classified employee" broadly to include security staff.

In summary, there was sufficient evidence presented that Lowrey was a "classified employee" for purposes of the intimidation statute.

*"True threat"*

M.M.-J. argues the State failed to prove he issued a "true threat" to Lowrey. To convict M.M.-J. of intimidating a classified employee, the State was required to prove he used the threat of force or violence. *See* RCW 28A.635.100(1). The intent to carry out the threat is not a necessary element of the charged crime. *See Avila*, 102 Wn. App. at 893. However, it is an implied element of intent to "utter the intimidating threat." *Id.* The wording of threats that "are in fact merely jokes, idle talk, or hyperbole" are not true threats. *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

"Because threats are a form of pure speech, a statute criminalizing threatening language 'must be interpreted with the commands of the First Amendment [to the United States Constitution] clearly in mind.'" *State v. Tellez*, 141 Wn. App. 479, 482, 170 P.3d 75 (2007) (internal quotation marks omitted) (quoting *State v. Williams*, 144 Wn.2d 197, 207, 26 P.3d 890 (2001)). A "true threat" is a "'statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life' of another person." *Id*. (internal quotation marks omitted) (quoting *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004)). Additionally, the statement must also satisfy the subjective standard, requiring that the speaker be "aware 'that others could regard [their] statements as' threatening violence and 'delivers them anyway.'"

12

No. 40993-7-III
*State v. M.H.M.-J.*

*Counterman v. Colorado*, 600 U.S. 66, 79, 143 S. Ct. 2106, 2117, 216 L. Ed. 2d 775 (2023) (quoting *Elonis v. United States*, 575 U.S. 723, 746, 135 S. Ct. 2001, 2015, 192 L. Ed. 2d 1 (2015)).

Here, M.M.-J. repeatedly threatened Lowrey. First, M.M.-J. told Lowrey that he better move out of his way and walked into Lowrey's hand after Lowrey found M.M.-J. vaping in the bathroom. M.M.-J. made several comments to Lowrey on their way to the Go Center: (1) he called Lowrey "a bitch ass n[*****]," (2) he said Lowrey was "a piece of shit," (3) he said he should "beat [Lowrey's] ass," and (4) he said "[he] was not afraid of [Lowrey]." RP (Jan. 7, 2025) at 19. The situation got worse, "ramping up more and more." RP (Jan. 7, 2025) at 20. M.M.-J. put his finger in Lowrey's face and for a second time, told Lowrey "I'm going to beat your ass" and called Lowrey "a bitch ass n[*****] over and over and over." RP (Jan. 7, 2025) at 20.

Lowrey testified he felt intimidated by a threat of force or violence. He noted that he felt vulnerable because he did not have the nonlethal tools available to him that he would have had as a police officer, and he was not willing to use a gun on M.M.-J. Lowrey also noted that M.M.-J. was taller and heavier than he was. The juvenile court found Lowrey's testimony credible.

In Scot Embrey's testimony, he confirmed M.M.-J. was threatening Lowrey. He heard M.M.-J. tell Lowrey, "You better not put your hands on me, I'm going to knock

13

No. 40993-7-III
*State v. M.H.M.-J.*

your ass out, or some—some sort of—just a sort of threatening phrase." RP (Jan. 7, 2025)

at 46. The juvenile court also found Embrey's testimony to be credible.

Lastly, M.M.-J. subjectively should have been aware that Lowrey could regard his

statements as threatening violence. M.M.-J. walked into Lowrey's hand, threatened to

"beat his ass" on multiple occasions, and pointed his finger directly in Lowrey's face. RP

(Jan. 7, 2025) at 19-20. In summary, this kind of behavior constitutes a true threat and is

not protected speech under the First Amendment.

Sufficient evidence supported M.M.-J.'s conviction for intimidation of a classified

employee.

Affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____      _____
Fearing, J.P.T.[†]                    Cooney, J.

---

[†] George B. Fearing, a retired judge of the Washington State Court of Appeals,
is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

14