IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SPOKANE COUNTY, a political subdivision of the State of Washington, | ) ) ) | No. 31941-5-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| EASTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, a statutory entity, | ) ) ) ) | UNPUBLISHED OPINION |
| Other, | ) ) | |
| FIVE MILE PRARIE NEIGHBORHOOD ASSOCIATION, and FUTUREWISE, a Washington Non-Profit Organization, | ) ) ) | |
| Appellants, | ) ) | |
| HARLEY C. DOUGLAS, Inc., | ) ) | |
| Respondent. | ) | |

FEARING, J. — We address once again the compliance of Spokane County with

Washington's intractable Growth Management Act (GMA), chapter 36.70A RCW, this

time in the context of a comprehensive plan amendment that rezoned a parcel of land. The reviewing administrative agency, the Growth Management Hearings Board (GMHB), invalidated the amendment, and the superior court reversed. We reverse in part and affirm in part the decisions of the superior court and remand the case to the GMHB for further proceedings.

Our previous decision in *Spokane County v. Eastern Washington Growth Management Hearings Board*, 173 Wn. App. 310, 293 P.3d 1248 (2013) (*Spokane County I*), provides answers to some of the issues raised in this appeal, but this appeal asks many other questions. Like the dispute in *Spokane County I*, this dispute is fact specific and demands a thorough review of the Spokane County comprehensive plan and a zoning ordinance, an intimate evaluation of the record before the Spokane County Board of Commissioners and the GMHB, and an analysis of the GMA. We address both the merits of the challenge to the rezone and procedural issues under the GMA.

## FACTS

Neighbors to 22.3 acres of undeveloped land and environmental groups challenged, before the GMHB, Spokane County's Resolution 11-1191. We refer to the challengers collectively as the "Neighborhood Association." The resolution adopted many changes to Spokane County's comprehensive plan. This appeal solely addresses a narrow portion of the resolution, the portion that adopted amendment 11-CPA-05 to the county's comprehensive plan and rezoned the 22.3 acres along N. Waikiki Road from

2

low-density residential to medium-density residential. The amendment allows the placement of multifamily complexes on the land, whereas the former zoning allowed duplexes as the most intense use on the tract. The Neighborhood Association contends the rezone, in part, failed to recognize the lack of access and lack of available utilities to the site and thereby violated Spokane County's comprehensive plan, its zoning code, and the GMA.

Washington's GMA requires a county to adopt and maintain comprehensive plans and development regulations which, among other goals, provide for the public facilities and services needed to support new development and reasonably zone land within the county. The GMA demands that a county yearly update the comprehensive plan. To help understand the dispute on appeal, we sketch critical fragments of the Spokane County comprehensive plan. The comprehensive plan conveniently divides itself into chapters by subject matter, with the first chapter being an introduction. The introductory chapter explores the nature of a comprehensive plan and outlines the demands of Washington's GMA.

Spokane County's comprehensive plan encompasses a set of goals, policies, maps, illustrations, and implementation strategies that outline acceptable methods of physical, social, and economic growth in the county. A central theme of the plan is the promotion of economic development that occurs in harmony with environmental protection and preservation of natural resources. The plan "establishes a pattern of land uses to shape

3

the future in desirable ways." Admin. Record (AR) at 835. Map designations incorporate residential, commercial, industrial and mixed-use areas. Identifying and defining these land use categories ensures compatibility among uses, protection of property values, and efficient provision of infrastructure and services.

Chapter 2 of Spokane County's comprehensive plan addresses "urban land use" and its pages start with the letters "UL." AR at 843-44. The urban land use chapter provides policy guidance for the development of Spokane County's unincorporated urban areas. The chapter's policies strive to improve quality of life, provide opportunities for innovative approaches to land use, and protect the county's community character. The policies work in tandem with the comprehensive plan map, which illustrates the location of various land use categories.

Chapter 2 of the comprehensive plan outlines plan goals, with each goal separately numbered beginning with UL.1. One goal is to identify and designate land for residential use into the three categories of low-, medium-, and high-density areas. Policy UL.7.1. Low-density residential includes a density range of 1 to and including 6 dwelling units per acre; medium-density residential includes a range of greater than 6 to and including 15 dwelling units per acre; and high-density residential is greater than 15 dwelling units per acre. This appeal entails Spokane County's change of a tract of land from low-density residential to medium-density residential under the county's comprehensive plan and zoning ordinance.

4

A number of goals in the comprehensive plan's Chapter 2 address the location of multifamily housing. The Neighborhood Association claims Spokane County's rezone violated some of these goals, in particular:

> UL.2.16    Encourage the location of medium and high density residential categories near commercial areas and public open spaces and on sites with good access to major arterials.
> UL.2.17    Site multifamily homes throughout the Urban Growth Area as follows:
> a) Integrated into or next to neighborhood, community or urban activity centers.
> b) Integrated into small, scattered parcels throughout existing residential areas.
> New multi-family homes should be built to the scale and design of the community or neighborhood, while contributing to an area-wide density that supports transit and allows for a range of housing choices.

AR at 848. A third urban land use policy goal, UL.2.20 reads:

> UL.2.20    Encourage new developments, including multifamily projects, to be arranged in a pattern of connecting streets and blocks to allow people to get around easily by foot, bicycle, bus or car. Cul-de-sacs or other closed street systems may be appropriate under certain circumstances including, but not limited to, topography and other physical limitations which make connecting systems impractical.

AR at 849

Chapter 7 of the Spokane County comprehensive plan addresses capital facilities and utilities. The chapter's pages begin with CF-1 and its goals begin with CF.1. According to the plan, public facilities and services are often taken for granted, but, without coordination and conscientious planning for future growth, facilities and services may be interrupted or inadequate. One fundamental tenet of the GMA is for local

governments to ensure the availability of adequate public facilities and services to serve existing and future developments. Existing facilities and services must be able to support new development or provisions for improvements must be made where deficiencies exist. Capital facilities include roads, water, sewer, solid waste, parks, jails, police protection, and fire protection. Policy goal CF.3.1 reads:

> Development shall be approved only after it is determined that public facilities and services will have the capacity to serve the development without decreasing levels of service below adopted standards.

AR at 276. The capacity to serve is termed "concurrency," which "describes the situation in which adequate facilities are available when the impacts of development occur, or within a specified time thereafter." WAC 365-196-840(b).

The Neighborhood Association also contends Spokane County violated one of its zoning ordinances when rezoning the subject land. Spokane County Zoning Code (SCZC) section 14.402.040 provides:

> The County may amend the Zoning Code when one of the following is found to apply.
> 1. The amendment is consistent with or implements the Comprehensive Plan and is not detrimental to the public welfare.
> 2. A change in economic, technological, or land use conditions has occurred to warrant modification of the Zoning Code.
> 3. An amendment is necessary to correct an error in the Zoning Code.
> 4. An amendment is necessary to clarify the meaning or intent of the Zoning Code.
> 5. An amendment is necessary to provide for a use(s) that was not previously addressed by the Zoning Code.

6

6. An amendment is deemed necessary by the Commission and/or Board as being in the public interest.

AR at 1027.

Spokane County ordinances addressing concurrency also apply to our dispute.

Spokane County Code section 13.650.102 reads:

> **13.650.102 - Concurrency facilities and services.**
> (1) The following facilities and services must be evaluated for concurrency:
>     (a) Transportation;
>     (b) Public water;
>     (c) Public sewer;
>     (d) Fire protection;
>     (e) Police protection;
>     (f) Parks and recreation;
>     (g) Libraries;
>     (h) Solid waste disposal;
>     (i) Schools.
> (2) Direct Concurrency.
> Transportation, public water and public sewer shall be considered direct concurrency services. Concurrency requirements for public water and public sewer service are detailed in Section 13.650.112. Transportation facilities serving a development must be constructed, or a financial guarantee for required improvements must be in place prior to occupancy. Applicable permit/project applications shall required transportation concurrency review, described in Section 13.650.104. A Concurrency Certificate shall be issued to development proposals that pass the transportation concurrency review.
> (3) Indirect Concurrency.
> Fire protection, police protection, parks and recreation, libraries, solid waste disposal and schools shall be considered indirect concurrency services. Spokane County shall demonstrate the adequacy of indirect concurrency services through the Capital Facilities Plan (CFP). The CFP will be updated annually, at which time all indirect concurrency services will be evaluated for adequacy. The evaluation will include an analysis of population, level of service and land use trends in order to anticipate

7

demand for services and determine needed improvements. If any indirect concurrency services are found to be inadequate, the County shall adjust the land use element to lessen the demand for services, include a project in the CFP to address the deficiency, or adjust the Level of Service. To implement any of these methods an amendment to the Comprehensive Plan is required.

We turn now to the land in question. Harley C. Douglass, Inc. (Douglass), owns 22.3 acres of undeveloped land, the property at issue in this appeal. The property lies within Spokane County's Urban Growth Area (UGA). An urban growth area is area "within which urban growth shall be encouraged, and outside of which growth can occur only if it is not urban in nature." RCW 36.70A.110. Existing urban utilities service the Douglass property. Spokane County Utilities provides sewer service, and Whitworth Water District supplies water service.

Before adoption of amendment 11-CPA-05, the Douglass property was zoned for low-density residential. All adjacent lands are also zoned for low-density residential. The county comprehensive plan identifies the nearest medium and high density residential areas as being a mile southeast of the site. The Douglass land is .9 miles from the nearest commercial area. The land is not near any public open space. According to the Regional Land Quantity Analysis for Spokane County Summary Report, redesignation of the Douglass parcel to medium density is unnecessary to meet projected growth in Spokane County.

The following map shows the property's irregular contour, with the property lying

within the bold border:



AR at 228. The property abuts Waikiki Road to the east and North Five Mile Road to the south. According to the hearing examiner's findings of fact entered in support of a 2007 plat application, Spokane County's Arterial Road Plan designates Waikiki Road as an "Urban Principal Arterial," and North Five Mile Road as an "Urban Collector Arterial." AR at 511. Nevertheless, a Spokane County Building and Planning staff report and a letter from Douglass to the Spokane County Board of Commissioners identified Waikiki Road as an urban minor arterial.

Douglass' site generally slopes down from the northwest to the southeast, away

9

from North Five Mile Road and toward Waikiki Road. Various utility easements extend through the site. Within the easements lie a high-voltage overhead transmission line, associated gravel access roads, and a high-pressure underground gas pipeline. Spokane County maintains that, because of the utility easements and the hilly and craggy topography of the land, Douglass may be able to develop only a small portion of its parcel, that portion being on the southern edge and the middle of the acreage.

Douglas previously sought to develop the property into 26 single-family homes and 12 duplexes. In 2007, a Spokane County hearing examiner approved a preliminary plat for the 38 structures in a subdivision called Redstone. The plat is pictured here:



AR at 366. The northeast corner of the property would remain undeveloped under the plan.

During the Redstone preliminary plat public hearing, neighbors raised concerns about the subdivision's singular access to Five Mile Road and concerns about the safety along the steep road because of an overload of traffic and lack of pedestrian accommodations. In obtaining approval for the Redstone subdivision, Douglass claimed that extension of a paved road in the preliminary plat for general vehicular access to Waikiki Road, meeting County standards, was not economically feasible. The Spokane County Engineering Department indicated that a road extension from the proposed subdivision to Waikiki Road would likely be difficult, due to the topography of the site. Nevertheless, Spokane County approved the Redstone plat conditioned, at Spokane County Fire District 9's request, on the construction of a second access road for fire vehicles to Waikiki Road.

Douglass thereafter changed plans for the site. On March 31, 2011, Douglass applied to amend Spokane County's comprehensive plan and rezone its property from low-density to medium-density residential. Douglass avowed that, because of changing economic conditions, a medium-density residential development best fit the location. Douglass hoped to build eight to ten apartment buildings, inclusive of 200 units, with parking lots surrounding the buildings. Douglass, however, has not disclosed a specific development plan or site plan or applied for a project permit. Spokane County labeled

No. 31941-5-III
*Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*

Douglass' application to amend the county's comprehensive plan and to rezone the property "Amendment 11-CPA-05" to its comprehensive plan.

Spokane County proceeded with public input and review by its Department of Building and Planning of Douglass' proposed zoning change. The department prepared a staff report, which read, in part:

> **PUBLIC COMMENT**
> One letter has been received which stated the proposal would lead to increased traffic on Five Mile Road, lower already low water pressure, increase stormwater runoff and lower property values.
>     . . . .
> There are a number of duplex uses near this site, but no multi-family uses. Waikiki Road is designated as an Urban Minor Arterial by Spokane County's Arterial Road Plan, has sidewalks on both sides and has bus service from Spokane Transit Authority. Five Mile Road is not listed on the Arterial Road Plan, is steep and windy and does not have sidewalks.
>     . . . .
> The Medium Density Residential designation allows multi-family residential development, among other uses. There are no multi-family developments adjacent to this site. Their inclusion would add variety to the area's housing mix.
>     . . . .
> The Mead School District serves this site. They were provided with an agency circulation regarding this proposal for review and coordination purposes.
>     . . . .
> **Summary:**
> Implementation of the Medium Density Residential designation at this site is consistent with the goals and objectives of the County's Comprehensive Plan. At the time of a specific development proposal, the site will be subject to County transportation concurrency regulations, as well as, other mitigation measures codified in County development codes.

AR at 220-26.

After its review of Douglass' application, the Spokane County Engineer wrote the Department of Building and Planning with its conditions of approval:

> This proposed comprehensive plan amendment is not being requested for a specific development proposal or site plan at this time. At such time a site plan is submitted for review, the applicant shall submit detailed traffic information for review by the County Engineer to determine what traffic impacts, if any, that the development would have on surrounding infrastructure. The applicant is advised that mitigation may be required for off-site improvements.
>
> The County Engineer will review this project for transportation concurrency requirements at the time of review of a land Use Application, when the project is defined with a specific use.

AR at 235.

The Douglass parcel lies within the Mead School District, who received notice of the proposed zone change. The Mead School District tersely wrote to the Department of Building and Planning: "The Mead School District believes that this request for a change in land use designation, if approved, could have an impact on schools. The District will respond with further remarks when the SEPA [State Environmental Policy Act, chapter 43.21C RCW] checklist is circulated for comment." AR at 343.

Futurewise, the Five Mile Neighborhood Association, and neighbors to the property voiced opposition to Douglass' application to rezone the property for medium-density residential. Neighbor A. J. Prudente wrote:

> The new Prairie View Elementary school was completed and opened for the 2007-2008 school year. Upon opening during registration there were many potential students that had to be turned away due to over population. Prairie View has been overpopulated since its opening and we

13

just recently received 4 portable classrooms for the start of the 2010-2011 school year. Even with the new portables the school is still overpopulated. Zoning Five Mile Prairie for apartment buildings will only make this situation worse. Please keep Five Mile Prairie zoned only for single family housing.

AR at 91.

Kathy Miotke, on behalf of the Five Mile Neighborhood Association, wrote:

The applicant states that this parcel has access to public transit and it does not. The only access and egress this parcel currently has is North Five Mile Road which has no transit service. And there is no safe way to walk along North Five Mile Road to Waikiki to find a bus stop. The applicant has stated correctly that the current access is North Five Mile Road, then states that he is "proposing" Waikiki as an access point. However, during the appeal of the applicant's Redstone Project, the neighbors begged for an access/egress off of Waikiki instead of North Five Mile Road and we were told that it was impossible. That makes it hard for us to believe this "proposed" change would occur.

The applicant states that this is not a wild life habitat. I agree it isn't now but it was before this land was clear cut. In fact, one of the FMPNA members took video from his phone of approximately 40 herd of deer standing in the middle of the property the evening after it was clear cut.

What we have here is a geographical hazardous area with steep slopes and erodible soils located within a CARA with high susceptibility – stormwater problems abound for residents. Please read carefully the letter submitted by Colleen Little of the Spokane County Stormwater Department dated May 6, 2006. You should have seen the drainage ways she described in her 2006 letter in May of this year, you could grow cranberries in the bog. These drainage ways are extremely important as they connect to the Little Spokane Natural area and watershed.

. . . .

I can tell you that Prairie View Elementary is at capacity even with four portable classrooms. And because of the unsafe roads surrounding the school, including North Five Mile Road, parents are asked to keep their children from walking or riding their bikes. In fact, taxpayers are paying approximately $200,000 a year for bus service even within a mile of the school.

14

The Staff report does not acknowledge that this is a geographical hazardous area which it clearly is. The pictures that are shown with this submission do not give you the full benefit of the topography with the steep slopes, the existing neighborhood and the twists and turns of our roadway. I don't believe these pictures were provided by staff as I don't believe Mr. Brock has seen the site. I wish every one of you would take a ride on the road and see the parcel and surrounding for yourself.

. . . .

To the east, to the west, to the north and to the south, all low density residential homes.

This is not a center or corridor. This is not sited next to a neighborhood urban activity center. This does not connect to a commercial center. This does not connect to a public open space. It does not have good access to a major arterial.

This doesn't even meet the definition of urban infill housing! Infill within an urban area is not 22.2 acres of land and urban infill respects the current character of the neighborhood which this zone change does not.

There is no market analysis, no feasibility study, no environmental impact study.

What is this? It is Spot Zoning which is not allowed by the Spokane Comprehensive Plan or GMA.

This does not fit and I urge you to recommend denial of this comprehensive plan amendment.

AR at 237-38.

Brion and Rene Reighard, who live on Five Mile Road, believe a multifamily development will lower the value of their home. They wrote:

The only person this development will help is the developer. There are plenty of new and used homes in the Five Mile Prairie Area that are currently unoccupied. We would prefer that Spokane County try and curb the urban sprawl that this development represents. The wildlife habitat that has been destroyed by the clear cut a few years ago is very noticeable, adding all these buildings will completely destroy it.

AR at 236.

15

Spokane County's Planning Commission, in a four-two vote, recommended denying amendment 11-CPA-05. The Planning Commission found the amendment inconsistent with many of Spokane County's planning policies that relate to traffic:

> The Planning Commission finds this proposal to be inconsistent with the following Comprehensive Plan Goals and Policies: Goal: T2, Policies: T.2.2, 3 & 7. Significant residential development has occurred on and near the Five Mile Prairie and transportation improvements have not kept up. This site is adjacent to one of the Prairie's access points (North Five Mile Rd.). It does not appear that the transportation improvements in the area are consistent with the Land Use Plan.
>
> The Planning Commission also finds this proposal inconsistent with Comprehensive Plan Goal: T.3.e, Policy: T.3e.1 which speaks to pedestrian and bicycle access. This proposal fronts on North Five Mile Rd. which is steep, windy and has no accommodations for pedestrians or bicyclists. The Spokane County Engineering Department says there are no plans for improvements and the applicant, who says they plan to use this road as one of their access points, has not indicated they plan to make any improvements.
>
> The amendment does not meet the criteria for a zone reclassification as provided by Sections 14.402.040 of the Zoning Code and the Planning Commission felt the proposal was not in the public's interest.
>
> The Commission, in general, thought that the traffic issues in the area needed to be addressed comprehensively and that the site is properly designated as Low Density Residential.
>
> Public Comments: Thirty-seven (37) public comments were received related to this proposal. Four (submitted by the applicant's agent) were for the amendment and 24 were against.

AR at 770.

Douglass appealed to the Spokane County Board of Commissioners. In turn, Douglass wrote multiple letters to the Board of Commissioners. On November 21, 2011, relying on a 2007 traffic impact analysis performed for the Redstone plat, Douglass

wrote:

>     As the board is undoubtedly aware, conditions in the single family housing market have deteriorated significantly since 2007. For the foreseeable future, development of the Redstone plat is no longer feasible due to a surplus of single family residential lots and rising construction costs. In addition, the constraints on the site due to steep slopes and utility easements make the useable portions more suitable for multi-family development. Consequently, in March of 2011, Douglass submitted an application for a comprehensive plan map amendment from Low Density Residential to Medium Density Residential (11-CPA-05).
>     The proposed change to medium density residential also creates an opportunity to address the neighboring property owners' concerns about traffic on North Five Mile Road. To accommodate development of the property for multifamily uses, Douglass proposes to construct a new access road Eastward across the property directly to Waikiki Road, an urban minor arterial. Exhibit C. The new access road is designed to County road standards. Douglass also proposes to construct a pedestrian access to the existing sidewalks on Waikiki Road. A secondary access onto North Five Mile Road would still be necessary, in part to accommodate access to the utility easements.
>     . . .With the new primary access onto Waikiki Road, multi-family development would significantly reduce the amount of projected traffic on North Five Mile Road. In the worst case, with 30 percent of the traffic still using the access onto North Five Mile Road, a multi-family development of the property at this density would generate only 31 a.m. peak hour trips and 37 p.m. peak hour trips, far less than what was projected for and approved as a part of the Redstone plat. Even if the project were developed at the maximum density allowed, the trips distributed to North Five Mile would still be less than the traffic impacts projected for and approved as part of the Redstone plat.

AR at 664. Douglass drew its winding, hilly access road to Waikiki in this picture:



AR at 673, 695.

On December 23, 2011, the Spokane County Board of County Commissioners adopted Resolution 11-1191 that approved amendment 11-CPA-05 to the county comprehensive plan. In other words, the Board of Commissioners rejected the recommendation of the County Planning Commission. Resolution 11-1191 covered many other subjects other than the zoning change to the Douglass property. Those portions of the resolution relevant to amendment 11-CPA-05 provided:

> **WHEREAS,** . . . In approving amendment 11-CPA-O5, the Board does not concur with the recommendation of the Spokane County Planning Commission that the proposal is inconsistent with the Goals and Policies of the Spokane County Comprehensive Plan and the written and oral testimony alleging traffic impacts to Five Mile Road and Waikiki Road; and

18

WHEREAS, . . . recognizing compliance with the Growth Management Act.

. . . .

**NOW, THEREFORE, BE IT RESOLVED** by the Board that it does hereby enter the following Findings of Fact:

. . . .

**Findings number 17 through 25 below pertain specifically to proposed Comprehensive Plan Amendment No. 11·CPA·05:**

17. Testimony in opposition to proposed amendment No. 11-CPA-05 alleged potential impacts to Mead School District and the capacity of Prairie View Elementary School, traffic on Five Mile Road, intrusion of multi-family use and density into the surrounding neighborhood, traffic impacts to the intersection of Five Mile Road and Waikiki Road, and incompatibility of the proposed amendment with Goals and Policies UL.2.16, UL.2.17, UL.7.1 and UL.7.2 of the Spokane County Comprehensive Plan.

18. Potential traffic impacts are properly addressed at project review level to be conducted pursuant to Spokane County Code as specified in Spokane County Division of Engineering and Road correspondence dated August 2, 2011 which advise the applicant that "at such time a site plan is submitted for review the applicant shall submit detailed traffic information for review by the County Engineer to determine what traffic impacts, if any, that the development would have on surrounding infrastructure. The applicant is advised that mitigation may be required for off-site improvements."

19. Subsequent to the public hearing on November 22, 2011 regarding 11-CPA-05, the applicant, at the Board's request, provided a trip generation/distribution letter dated November 23, 2011 that provided documentation that provision of a second access point from the site to Waikiki Road would reduce the number of vehicle trips using Five Mile Road and more specifically in the p.m. peak hours and less trips than the previously approved preliminary plat approved for the subject property (PN-1974-06: Redstone).

20. The proposed amendment is consistent with the criteria for a zone reclassification under Section 14.402.040 (1) and (2) of the Spokane County Zoning Code as the proposed amendment implements the goals and objectives of the Comprehensive Plan and the subject area has experienced a change of conditions as evidenced by development of duplex dwelling units in proximity to the subject property thereby creating a mix of land use

19

types and densities in the Urban Growth Area boundary.

21. Traffic impacts from the proposal will be mitigated for compliance with Spokane County Code and concurrency standards at the project level as specified by the Division of Engineering and Roads in their comments regarding the proposed amendment dated August 2, 2011.

22. Traffic impacts from the proposed amendment may be further mitigated by provision of a second access point to Waikiki Road, to be reviewed at the project level, which will reduce the number of vehicle trips on Five Mile Road as evidenced by the trip distribution letter submitted by the applicant on November 23, 2011.

23. The proposed amendment is consistent with Spokane County Comprehensive Plan Goals and Policy UL.2.16 that encourage location of medium and high density residential categories with good access to major arterials such as Waikiki Road, which is designated as an Urban Minor Arterial.

24. The proposed amendment is consistent with the Spokane County Comprehensive Plan Goal and Policy UL.2.17 as the subject property is located inside the Urban Growth Area, is served with public utilities, provides a range of housing types and densities, is considered infill development of a site with development constraints due to site topography and proximity to existing transmission lines for electricity, an Avista Substation, and a natural gas pipeline.

25. The Board finds that the proposed amendment is consistent with the Spokane County Comprehensive Plan Goals and Objectives UL.7, UL.7.1, UL.7.2, UL.7.3, UL7.12, UL.8, UL.8.1, UL.9a, UL.9b, H.3a, CF.3.1 as the subject site is served with public utilities, is located in the Urban Growth Area, has adequate capacity for public sewer, will create an urban area with a variety of housing types and prices with a variety of residential densities, constitutes limited infill development, and is located in an area where adequate public facilities and services can be provided without decreasing levels of service.

26. Approval of the proposed amendment should be conditioned upon a development agreement between the proponent of the amendment and Spokane County requiring at a minimum that development upon the property will provide public access to and improvements to Waikiki Road including curbs, gutters, sidewalks and drainage as required by applicable codes, regulations and Spokane County Road standards based upon the development proposed upon the property and review of a detailed traffic analysis. The internal road within the development shall be constructed to

Spokane County Road Standards, shall include sidewalks on both sides to facilitate a future pathway, shall be owned and maintained by the property owner until site development is complete at which time ownership and maintenance shall be transferred to Spokane County and provide a termination at the west property line to provide public access to adjoining properties with the intent of mitigation of vehicular traffic on Five Mile Road and provide access to Waikiki Road consistent with Spokane County Road standards.

. . . .

**BE IT FURTHER RESOLVED**, that approval of proposed amendment No. 11-CPA-05 and the concurrent zone reclassification thereto shall only be of effect upon execution of a Development Agreement pursuant to RCW 36.70B as described above in finding number 26.

AR at 9-14.

In paragraph 26 of Resolution 11-1191, the Spokane County Board of County Commissioners conditioned its approval of 11-CPA-05 on Douglass providing public access to and improvements to Waikiki Road including curbs, gutters, sidewalks, and drainage, and on the county and Douglass first entering a development agreement. The Board of County Commissioners reiterated that traffic concerns should be addressed later during the project review process.

PROCEDURE

On February 27, 2012, Five Mile Prairie Neighborhood Association and Futurewise petitioned the Growth Management Hearings Board for review of the approval of Spokane County comprehensive plan amendment 11-CPA-05 and another amendment found in Resolution 11-1191. Both organizations claimed that its members included landowners and residents of Spokane County who were aggrieved and adversely

21

affected by the county's adoption of the resolution.

On March 27, 2012, Douglass moved to intervene in the GMHB proceeding. On April 4, 2012, the GMHB allowed Douglass to intervene. The prehearing order and order granting intervention read, in part:

> A party who fails to attend or participate in any hearing or other stage of the adjudicative proceedings before the Board in this case may be held in default and an order of default or dismissal may be entered pursuant to WAC 242-03-710.

The GMHB served Douglass with this order.

Before the GMHB, the Neighborhood Association challenged amendment 11-CPA-05 as inconsistent with Spokane County's comprehensive plan and several of its development regulations. The Neighborhood Association also argued that the amendment did not satisfy Spokane County Code 14.402.040's criteria for amendments. Spokane County countered that the GMHB lacked jurisdiction to review amendment 11-CPA-05. The county casted the rezone as a project permit, appealable to superior court under the Land Use Petition Act (LUPA), chapter 36.70C RCW, and not a development regulation or comprehensive plan amendment appealable to the GMHB.

On July 19, 2012, the GMHB conducted a hearing on the merits. Douglass neither appeared at the hearing nor filed a brief. At the conclusion of the hearing, the GMHB moved to dismiss Douglass.

22

On August 23, 2012, the GMHB issued its final decision and order. The GMHB first ruled it had jurisdiction to review the concurrent rezone. The GMHB then dismissed Douglass as a party, writing:

> Intervenor Harley C. Douglass, Inc. failed to file any brief and failed to attend the July 19, 2012 Hearing on the Merits. Pursuant to WAC 242-03-710, the Board on its own motion entered an **Order of Dismissal** of Harley C. Douglass, Inc. for failure to file any brief and failure to attend the Hearing on the Merits.

AR at 1018. The GMHB served this order on Douglass.

In its August 23 final decision, the GMHB concluded that Spokane County failed to comply with the Growth Management Act when it enacted Resolution 11-1191, as it relates to amendment 11-CPA-05. The GMHB began its analysis by recognizing the deference owed local governments:

> For the purposes of board review of the comprehensive plans and development regulations adopted by local government, the GMA establishes three major precepts: a presumption of validity; a "clearly erroneous" standard of review; and a requirement of deference to the decisions of local government.

AR at 1011.

In its final decision, the GMHB found amendment 11-CPA-05 consistent with Spokane County comprehensive plan policies to: "[e]nsure that the design of infill development preserves the character of the neighborhood," policy H.3.2; "[i]dentify and designate land areas for residential use, including categories for low-, medium-, and high-density areas," policy UL.7.1; and "[s]ite multifamily homes throughout the Urban

23

Growth Area," policy UL.2.17. AR at 1020, 1021, 1024. The GMHB found the

amendment inconsistent, however, with three of the policies in Spokane County's

comprehensive plan: UL.2.16, UL.2.20, and CF.3.1. Under urban land use policy 2.16,

Spokane County should: "Encourage the location of medium and high density residential

categories near commercial areas and public open spaces and on sites with good access to

major arterials." AR at 247. The GMHB noted that much of the opposition to the

proposed amendment to the comprehensive plan concerned access to Five Mile Road.

The GMHB further observed that the Spokane County Planning Commission

recommended denial of the proposed amendment due to outdated roads to the Douglass

site. According to the GMHB, Five Mile Road is steep, windy, and lacks

accommodations for pedestrians or bicyclists. Yet, Five Mile Road will be one of the

access points for the proposed development despite neither the County nor the developer

having any plans for transportation improvements to Five Mile Road.

In its final decision, the GMHB noted that, after the Planning Commission vote,

Douglass submitted a letter to the county stating that "the development traffic is proposed

to primarily use Waikiki Road to access the development with little to no need for the use

of Five-Mile Road." AR at 693. Nevertheless, the GMHB observed that the potential

road would wind across closely packed contour lines as it traverses steep terrain. The

GMHB held that the County Commissioners findings of fact 22 and 23 were not based on

substantial evidence. Finding of fact 23 inconsistently stated there was good access to

major arterials such as Waikiki Road but the record showed that Waikiki Road is a minor arterial not a major arterial. Five Mile Road is a steep, windy, two lane road that has no arterial designation. The GMHB further ruled that the site of the proposed development lacked good access to major arterials, and amendment 11-CPA-05 was inconsistent with and thwarts Spokane County comprehensive plan policy UL.2.16.

Under Spokane County comprehensive plan urban land use policy 2.20, Spokane County must encourage multifamily projects to be arranged in a pattern of connecting streets and blocks, but the policy also allows cul-de-sacs or other closed street systems under certain circumstances including, but not limited to, topography and other physical limitations which make connecting systems impractical. In its August 23, 2012 final decision, the GMHB held amendment 11-CPA-05 to contravene UL.2.20. In so ruling, the GMHB repeated its comments about poor access to the site. The GMHB focused on the inability of pedestrians and bicyclists to access the proposed development from either Five Mile Road or Waikiki Road.

Under Spokane County Capital Facilities and Utilities policy 3.1: "Development shall be approved only after it is determined that public facilities and services will have the capacity to serve the development without decreasing levels of service below adopted standards." AR at 276. The GMHB found that amendment 11-CPA-05 thwarted policy CF.3.1. The GMHB emphasized the Planning Commission's findings that Five Mile Road would not be suitable for children to walk along to attend school, and in recognition

25

of the lack of any pedestrian facilities, the schools have incurred significantly increased costs to transport school children who live near Five Mile Road. The GMHB found that there was substantial evidence in the record showing that school facilities lack capacity to serve the proposed medium density development.

The GMHB also concluded that amendment 11-CPA-05 does not meet the criteria for a zone reclassification as mandated under SCZC section 14.402.040. The code section provides, in relevant part:

> The County may amend the Zoning Code when one of the following is found to apply.
> 1. The amendment is consistent with or implements the Comprehensive Plan and is not detrimental to the public welfare.
> 2. A change in economic, technological, or land use conditions has occurred to warrant modification of the Zoning Code.
> . . . .
> 6. An amendment is deemed necessary by the Commission and/or Board as being in the public interest.

AR at 177-78.

Douglass argued before the Spokane County Board of Commissioners and the GMHB that the previously approved Redstone plan was no longer feasible in this economy of surplus single family residential lots and rising construction costs. In its August 23 decision, the GMHB rejected this argument, reasoning:

> The development of duplex dwelling units in proximity to the subject property cannot constitute a change in circumstances under SCZC 14.402.040(2) since duplexes are already a permitted use in the "Low Density Residential" zone and so there is no need to change the zoning to accommodate duplexes.

Moreover, if zoning classifications could be readily changed whenever there are cyclical market fluctuations (as advocated by applicant's engineering consultant), then property owners could lose the reliance value of the zoning code and thereby frustrate the investment backed expectations of homeowners.

AR at 1029 (footnotes omitted).

Ultimately, the GMHB invalidated amendment 11-CPA-05 under RCW 36.70A.302. The GMHB concluded the amendment substantially interfered with GMA goals (1), (3), and (12) in RCW 36.70A.020, which read:

(1) Urban growth. Encourage development in urban areas where adequate public facilities and services exist or can be provided in an efficient manner.

. . . .

(3) Transportation. Encourage efficient multimodal transportation systems that are based on regional priorities and coordinated with county and city comprehensive plans.

. . . .

(12) Public facilities and services. Ensure that those public facilities and services necessary to support development shall be adequate to serve the development at the time the development is available for occupancy and use without decreasing current service levels below locally established minimum standards.

The GMHB wrote:

The Board has determined that Spokane County failed to comply with the GMA and has remanded this matter to the County to achieve compliance under RCW 36.70A.300. The Board hereby finds and concludes that the continued validity of Amendment 11-CPA-05 would substantially interfere with the fulfillment of GMA Planning Goals 1, 3, and 12.

Moreover, there is evidence in the record indicating a risk for project vesting in this case, which would render GMA planning procedures as ineffectual and moot—if such project vesting would occur, then the remand

of this case to the County would be meaningless and there would be no practical way to address GMA compliance.

### Conclusion

Based upon the foregoing, the Board determines that the continued validity of Amendment 11-CPA-05 would substantially interfere with the fulfillment of RCW 36A.70A.020(1) [Urban Growth], .020(3) [Transportation], .020(12) [Public facilities and services]. Therefore, the Board issues a Determination of Invalidity as to Comprehensive Plan Amendment 11-CPA-05.

AR at 1034.

Douglass and Spokane County filed separate petitions with Spokane County Superior Court for review of the GMHB's final decision and order. The superior court consolidated the appeals. Before the superior court, Douglass and the county again argued that the GMHB lacked jurisdiction. Douglass also argued the GMHB erred when it dismissed it from the proceedings.

The superior court reversed the GMHB on all grounds. The court ruled that the GMHB lacked subject matter jurisdiction to review the concurrent rezone. The superior court reversed the GMHB's dismissal of Douglass "because Harley C. Douglass, Inc. complied with the GMHB's orders and the requirements for intervention before the GMHB so the GMHB erroneously interpreted or applied the law and/or abused its discretion." CP at 494. Last, the superior court reversed the GMHB's invalidation of amendment 11-CPA-05, because "the County's planning decision was not clearly erroneous in view of the entire record." CP at 494-95. The Spokane County Superior Court remanded to the GMHB with instructions to enter an order finding the county in

28

compliance with GMA when adopting amendment 11-CPA-05.

## LAW AND ANALYSIS

Issue 1: Whether the GMHB correctly dismissed Douglass from its proceeding?

Answer 1: We decline to resolve this issue, because its resolution does not impact the merits of the appeal.

Before addressing the merits of the Neighborhood Association's appeal, we must address two procedural questions. First, the GMHB dismissed Douglass from its proceeding because of Douglass' failure to file a brief and appear at the hearing. The Neighborhood Association assigns error to the trial court's reversal of this dismissal. The Neighborhood Association argues WAC 242-03-710 supports the GMHB's ruling. As a preliminary issue, the Neighborhood Association also contends that, because no party challenged Douglass' dismissal before the GMHB, the GMHB's action could not be challenged on appeal to the superior court or litigated in this court. In turn, Douglass contends that, regardless of its dismissal from the GMHB proceeding, it had standing, under the Administrative Procedure Act, chapter 34.05 RCW, to participate in the trial court proceeding and has standing for the same reason to participate in this appeal. Douglass emphasizes RCW 34.05.530, which gives standing to obtain judicial review of agency action to any person aggrieved or adversely affected by the agency action.

We decline to resolve the issue of Douglass' standing because its resolution does not impact our decision on the merits. Principles of judicial restraint dictate that if

29

resolution of another issue effectively disposes of a case, we should resolve the case on that basis without reaching the first issue presented. *Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007); *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 68, 1 P.3d 1167 (2000).

Even if we ruled that Douglass could not participate in this appeal, Spokane County would remain a party. Spokane County forwards the same arguments on the merits of the appeal as forwarded by Douglass. Dismissing Douglass would not narrow those arguments. Douglass raises some arguments about the GMHB's subject matter jurisdiction that the county does not raise. Nevertheless, as shown below, we reject those arguments.

Issue 2: Whether the GMHB held subject matter jurisdiction over the petition challenging Resolution 11-1191 and amendment 11-CPA-05 adopted concurrently by Spokane County?

Answer 2: Yes.

The second procedural question for us to address arises from the trial court's ruling that the GMHB lacked subject matter jurisdiction over the Neighborhood Association's petition. The Neighborhood Association assigns error to this ruling. If we affirmed this ruling by the trial court, we need not address the merits of the appeal. Nevertheless, we reverse the trial court's ruling on subject matter jurisdiction.

RCW 36.70A.280 bestows jurisdiction upon the GMHB over limited subject

30

matters. The statute reads, in relevant part:

> (1) The growth management hearings board shall hear and determine only those petitions alleging either:
> (a) That, except as provided otherwise by this subsection, a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter . . . or chapter 43.21C RCW as it relates to *plans, development regulations, or amendments*, adopted under RCW 36.70A.040 or chapter 90.58 RCW.

(Emphasis added.)

The plans, to which RCW 36.70A.280 refers, are comprehensive plans. RCW 36.70A.040. The definition of "development regulation" includes "zoning ordinances," but excludes "approval of a project permit application" as defined in RCW 36.70B.020(4). RCW 36.70A.030(7). RCW 36.70B.020(4) defines a "project permit application" as:

> any land use or environmental permit or license required from a local government for a project action, including but not limited to building permits, subdivisions, binding site plans, planned unit developments, conditional uses, shoreline substantial development permits, site plan review, permits or approvals required by critical area ordinances, *site-specific rezones authorized by a comprehensive plan or subarea plan, but excluding the adoption or amendment of a comprehensive plan,* subarea plan, or development regulations except as otherwise specifically included in this subsection.

(Emphasis added.)

Resolution of subject matter jurisdiction in this appeal depends on whether we characterize amendment 11-CPA-05 to the county's comprehensive plan as a rezone, on the one hand, or a project permit or site-specific rezone authorized by a previously

31

existing comprehensive plan, on the other hand. The resolution has characteristics of both. If the amendment is a rezone, the GMHB held subject matter jurisdiction. We hold the resolution and corresponding comprehensive plan amendment to be a rezone other than a site-specific rezone. We also note that Spokane County's argument that the amendment constituted a project permit contradicts its position on the merits that no relief should be granted the Neighborhood Association because its complaints about the proposed project can be heard at the permitting stage.

After the trial court's ruling, this court issued its opinion in *Spokane County v. Eastern Washington Growth Management Hearings Board*, 176 Wn. App. 555, 309 P.3d 673 (2013), *review denied*, 179 Wn.2d 1015 (2014) (*Spokane County II*). We deem *Spokane County II* controlling. In that case, as here, the Spokane County Board of Commissioners amended the county's comprehensive plan and rezoned certain property in one legislative action. We addressed whether the rezone was an amendment to a development regulation subject to challenge under the GMA or a project permit subject to review under LUPA. We held the GMHB had jurisdiction because the rezone was adopted at the same time as the comprehensive plan amendment:

> Considering all, we hold a site-specific rezone is a project permit approval under LUPA if it is authorized by a *then-existing* comprehensive plan and, by contrast, is an amendment to a development regulation under the GMA if it implements a comprehensive plan amendment. In sum, the hearings board had subject matter jurisdiction to review amendment 07–CPA–05's rezone for compliance with both the GMA and SEPA. *See* former RCW 36.70A.280(1)(a), .290(2).

32

*Spokane County II*, 176 Wn. App. at 572 (emphasis added). Thus, if the county authority adopts the rezone concurrent with the amendment to the comprehensive plan, the GMHB can assume subject matter jurisdiction under the GMA.

In this appeal, Spokane County respectfully disagrees with our analysis in *Spokane County II*, but concedes its application. Douglass urges reversal of *Spokane County II*. Douglass argues *Spokane County II* failed to explain when and how a comprehensive plan becomes "existing," and then Douglass poses hypothetical questions in an attempt to belittle our holding.

Douglass first asks: if a county adopts a rezone one day after the authorizing amendment to a comprehensive plan, is the amended plan an "existing plan?" Stated differently, do the rezone and the amendment to the comprehensive plan retain concurrent status if not adopted on the same day? Or does the rezone implement an already existing comprehensive plan if the county adopts the rezone a day after the authorizing amendment to the comprehensive plan? Douglass presumably wishes to drive the point that a government entity could avoid application of *Spokane County II* by always adopting a requested rezone one day, or perhaps even one hour, after amending the comprehensive plan, such that the two are no longer concurrent or subject to the GMHB's jurisdiction. Since no delay occurred in the adoption of the rezone here, however, we need not address Douglass' question.

33

Douglass also asks the existential question: "If the GMHB upheld an amendment to a comprehensive plan, would the comprehensive plan, as amended, then become an 'existing' comprehensive plan such that the concurrent rezone became 'authorized' and therefore a 'project permit' over which the GMHB lacked jurisdiction?" Br. of Resp't Harley C. Douglass at 17. In other words, is the amendment in existence before approval by the GMHB? We believe the answer is no, since the upholding of an amendment is not itself a second amendment. Under RCW 36.70A.320(1), comprehensive plans and amendments thereto are presumed valid upon adoption.

In Washington, the doctrine of stare decisis requires a clear showing that an established rule is incorrect and harmful before it is abandoned. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004); *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). Douglass has not met its burden of showing *Spokane County II* was incorrectly decided or that its holding is harmful.

Issue 3: Whether the GMHB erred when declaring amendment 11-CPA-05 to be inconsistent with Spokane County's comprehensive plan policy UL.2.16?

Answer 3: No.

We now begin our analysis of each of the alleged inconsistencies of the comprehensive plan amendment with the preexisting Spokane County comprehensive plan and the county zoning code. The GMHB found amendment 11-CPA-05 inconsistent with three of Spokane County's comprehensive plan policies: UL.2.16, UL.2.20, and

34

CF.3.1. We address separately whether the plan amendment violated the respective

polices. We later address whether any such violations compels the invalidation of

amendment 11-CPA-05.

The central purpose of the Growth Management Act is to coordinate land use,

zoning, subdivision, planning, development, natural resources, public facilities, and

environmental laws into one scheme in order to concentrate new development in compact

urban growth areas, while conserving environmentally critical land and valuable natural

resources. Richard L. Settle & Charles G. Gavigan, *The Growth Management Revolution*

*in Washington: Past, Present, and Future*, 16 U. PUGET SOUND L. REV. 867, 872-73

(1993). The GMA requires counties to compose comprehensive plans to responsibly

manage their growth and to enact regulations to effectuate those plans. A comprehensive

plan is a guide or blueprint to be used when making land use decisions. *Citizens for*

*Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 873, 947 P.2d 1208 (1997).

Several GMA provisions impose requirements upon the comprehensive plan and plan

amendments. RCW 36.70A.130(1)(d) dictates:

> Any amendment of or revision to a comprehensive land use plan
> shall conform to this chapter [the Growth Management Act]. Any
> amendment of or revision to development regulations shall be consistent
> with and implement the comprehensive plan.

RCW 36.70A.070 commands: "The plan shall be an internally consistent document."

Under the GMA, a newly adopted or amended development regulation must be

35

"consistent with and implement the comprehensive plan." RCW 36.70A.040(3)(d),

(4)(d), (5)(d); *See, e.g., Spokane County II*, 176 Wn. App. at 574-75. There need not be

strict adherence, but any proposed land use decision must generally conform to the

comprehensive plan. *Citizens for Mount Vernon*, 133 Wn.2d at 873; *Barrie v. Kitsap

County*, 93 Wn.2d 843, 849, 613 P.2d 1148 (1980). Ultimately, the comprehensive plan

and any amendment to it must obey the GMA's clear mandates. *Spokane County II*, 176

Wn. App. at 575. The GMHB is charged with adjudicating GMA compliance and

invalidating noncompliant comprehensive plans. RCW 36.70A.280; .302; *City of

Arlington v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 768, 778, 193 P.3d

1077 (2008).

Under Spokane County's comprehensive plan Urban Land Use (UL) policy 2.16,

the county must: "Encourage the location of medium and high density residential

categories near commercial areas and public open spaces and on sites with good access to

major arterials." AR at 247. The Spokane County Board of Commissioners found:

> 23. The proposed amendment is consistent with Spokane County
> Comprehensive Plan Goals and Policy UL.2.16 that encourage location of
> medium and high density residential categories with good access to major
> arterials such as Waikiki Road, *which is designated as an Urban Minor
> Arterial.*

AR at 13 (emphasis added). The County's findings of fact did not address whether the

Douglass project would lie near commercial areas or public open spaces. The GMHB

held that the finding of fact 23 was not based on substantial evidence. We agree.

We first address whether the Douglass site is near commercial areas and public open spaces. The Spokane County Board of Commissioners entered no finding that the land lay near either. The Douglass land is .9 miles from the nearest commercial area.

Spokane County argues that the Neighborhood Association does not indicate what constitutes or what distance constitutes "near." Although we agree that the Neighborhood Association provides no help in measuring nearness in this context, the Spokane County Board of Commissioners also afforded us no assistance. Instead, the Board of Commissioners ignored the policy language. In its brief, Spokane County also fails to supply any definition for "near." We will therefore defer to the GMHB who did not consider .9 miles to be near the proposed development. Presumably the policy seeks to provide shopping areas within reasonable walking distance for the large number of residents of a medium density development. Although many people walk more than .9 miles each day, few people walk this distance for shopping purposes.

The county also contends policy UL.2.16 only "encourages" closeness and good access. It does not "demand" closeness or good access. Along these lines, the county argues that policy UL.2.16 is only one of competing goals to be balanced with other goals. The weighing of these goals, Spokane County argues, is for the local government and not the GMHB. We might consider these arguments compelling had the Spokane County Board of Commissioners weighed, on the record, the various goals and polices of the GMA. It did not. We will return to these arguments and our response when we

37

determine if amendment 11-CPA-05 should be declared invalid. Our decision in *Spokane County I*, 173 Wn. App. 310 (2013) addressed the use of the word "encourage" in the context of addressing the invalidity of the zoning amendment. 173 Wn. App. at 333. We note that in *Spokane County I*, this court held that the rezoning amendment passed muster under Spokane County's UL.2.16 because the high density project was adjacent to a shopping center and surrounding commercial development.

UL.2.16 also desires that the Douglass site benefit from good access to major arterials. Douglass' property abuts two roads: Five Mile Road and Waikiki Road. Five Mile Road is not a major arterial. For the first time on appeal, Spokane County argues that Waikiki Road is a major arterial. We must limit our response to the county's argument to the record before the GMHB. *Pierce County Sheriff v. Civil Serv. Comm'n for Sheriff's Emp. of Pierce County*, 98 Wn.2d 690, 693-94, 658 P.2d 648 (1983). The record defeats the county's argument.

A hearing examiner addressing Douglass' Redstone application wrote that Waikiki Road is a minor principal arterial. Nevertheless, the examiner's finding is not a direct source for this information. Also, the examiner's use of the adjective "principal" rather than "major," lessens the credibility of the finding. "Minor" and "principal" are inconsistent terms.

The Department of Building and Planning staff report identified Waikiki as a "Minor Urban Arterial." Douglass' letter to the Board of Commissioners labels Waikiki

38

Road as minor arterial. Spokane County's own internally inconsistent finding of fact 23 designates Waikiki Road as minor arterial.

Spokane County agrees that the record before the Board of Commissioners and the GMHB only labeled Waikiki Road as a minor arterial. Spokane County claims any identification of Waikiki Road as a minor arterial is an unfortunate error and asks this court to take judicial notice of Spokane County's Arterial Road Map, available at www.spokanecounty.org/data/engineers/traffic/arterialroadmap.pdf, which identifies Waikiki as an "urban principal arterial." We deny Spokane County's request.

ER 201 permits a court to take judicial notice of "adjudicative facts . . . not subject to reasonable dispute" in the sense that they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Spokane County does not isolate which ground or grounds it forwards in asking us to take judicial notice. We do not consider the classification of Waikiki Road's status to be common knowledge within Spokane County, nor does the county argue such. We also know of no decision that recognizes an Internet web page to be a source whose accuracy cannot reasonably be questioned. In *In re Marriage of Meredith*, 148 Wn. App. 887, 904, 201 P.3d 1056 (2009), the husband asked this court to take judicial notice of information on internet sites of immigrant rights organizations in order to support his claim of judicial bias. This

court reasoned, with double negatives, that information contained on the internet sites were not from a source whose accuracy cannot reasonably be questioned.

We recognize that Spokane County asks us to take judicial notice of information on a government entity website, rather than a website of questionable origin. Nevertheless, we will not take judicial notice of information on a government website that is inconsistent with all evidence before the government entity and contrary to the entity's own findings of fact.

The Spokane County Board of Commissioners also found that the Douglass land garnered good access to Waikiki Road. The GMHB correctly concluded that substantial evidence did not support this finding. A review of the record shows no evidence supported the finding. "Good access" is more of an opinion than a fact, because of the modifier "good." Spokane County failed to include in its finding any underlying facts upon which it found good access to Waikiki Road.

Unlike other policy goals couched in concurrency language, policy UL.2.16 seeks good access presently, as opposed to simply by completion of development. At the present, the site lacks direct access to Waikiki Road. Douglass' engineer included a map depicting a potential site road joining with Waikiki Road. This street would wind across closely packed contour lines as it traverses steep terrain. These characteristics are not hallmarks of good access. Finally, Douglass previously represented, when advocating the Redstone subdivision, that an access road to Waikiki Road was impossible.

40

Spokane County may also rely on its conditioning of amendment 11-CPA-05 on the developer's entering a development agreement requiring access to Waikiki Road. This reliance is misplaced since UL.2.16 desires current, good access. The proposed street is neither current nor good.

Spokane County contends that policy UL.2.16 does not capitalize "major arterial" and the term is not defined in the comprehensive plan. So, argues the county, the definition of "major arterial" is not necessarily the same as found in the county classification system, and the Board of Commissioners was therefore free to conclude that Waikiki Road is a major arterial. Spokane County is using doublespeak. The county fails to provide us any other definition for "major arterial." The Board of Commissioners failed to include in its findings why Waikiki Road should be considered a major arterial when it is otherwise designated a minor arterial.

Spokane County relies on our decision in *Spokane County I*. In *Spokane County I*, we ruled that the county only needs to ensure sufficient facilities at time of development, not at the time of amending its comprehensive plan. Nevertheless, this ruling was not based on UL.2.16, but on the GMHB's use of RCW 36.70A.070(6)(b) to invalidate the zoning amendment. The statute demands concurrency. Concurrency does not exact sufficient utilities and roads until someone begins to live on the land. UL.2.16 encourages currency, which is sufficient roads in the present. Thus, the county's reliance

41

is misplaced. *Spokane County I* did not address the question of whether the decision's proposed development enjoyed good access to a major arterial.

Spokane County may argue that, under policy UL 2.16, the acreage need not enjoy good access to major arterials, if the site remains near commercial areas. We do not read the policy as such since the policy employs the word "and" between commercial areas and good access. We presume "and" functions conjunctively. *State v. Kozey*, 183 Wn. App. 692, 698, 334 P.3d 1170 (2014), *review denied*, 182 Wn.2d 1007 (2015). Also, nearness to a commercial area does not lessen the need for a major arterial. To the contrary, this closeness may increase the need.

We would be remiss to continue without now discussing the standards of review for the GMHB, the superior court, and this appellate court. The GMA directs the GMHB to grant Spokane County considerable deference in its planning decisions. RCW 36.70A.320(3) reads:

> In any petition under this chapter, the board, after full consideration of the petition, shall determine whether there is compliance with the requirements of this chapter. In making its determination, the board shall consider the criteria adopted by the department under RCW 36.70A.190(4). The board shall find compliance unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of this chapter.

To find an action "clearly erroneous," the GMHB must be left with the firm and definite conviction that a mistake has been committed. *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd*, 142 Wn.2d 543, 552, 14 P.3d 133 (2000).

The GMA contains a unique provision, adopted by the state legislature in 1997,

presumably because the legislature concluded that the GMHB failed to give sufficient

deference to local government planning decisions. RCW 36.70A.3201 reads:

> The legislature intends that the board applies a more deferential
> standard of review to actions of counties and cities than the preponderance
> of the evidence standard provided for under existing law. In recognition of
> the broad range of discretion that may be exercised by counties and cities
> consistent with the requirements of this chapter, the legislature intends for
> the board to grant deference to counties and cities in how they plan for
> growth, consistent with the requirements and goals of this chapter. Local
> comprehensive plans and development regulations require counties and
> cities to balance priorities and options for action in full consideration of
> local circumstances. The legislature finds that while this chapter requires
> local planning to take place within a framework of state goals and
> requirements, the ultimate burden and responsibility for planning,
> harmonizing the planning goals of this chapter, and implementing a
> county's or city's future rests with that community.

This GMA provision shows the legislature's desire that the GMHB reluctantly declare a

county action to be noncompliant or invalid. This deference is not unlimited, however.

Our state high court observed:

> Without question, the "clearly erroneous" standard requires that the
> Board give deference to the county, but all standards of review require as
> much in the context of administrative action. The relevant question is the
> degree of deference to be granted under the "clearly erroneous" standard.
> The amount is neither unlimited nor does it approximate a rubber stamp. It
> requires the Board to give the county's actions a "critical review" and is a
> "more intense standard of review" than the arbitrary and capricious
> standard.

*Swinomish Indian Tribal Cmty. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 161 Wn.2d 415,

435 n.8, 166 P.3d 1198 (2007).

Spokane County and Douglass lost before the GMHB. When a party appeals a

GMHB decision to a court, the court reviews the board decision, not the local

government action. RCW 36.70A.300(5). We do not defer to the Superior Court.

*Spokane County II*, 176 Wn. App. at 564-65 (2013). On review, we stand in the same

position as a superior court reviewing a board's decision. *Lewis County v. W. Wash.*

*Growth Mgmt. Hr'gs Bd.*, 157 Wn.2d 488, 497, 139 P.3d 1096 (2006). The court, be it

the superior court or an appeals court, applies a different standard of review from that of

the GMHB as supplied by the Washington Administrative Procedure Act. RCW

34.05.570 reads, in pertinent part:

> (1) Generally. Except to the extent that this chapter or another statute
> provides otherwise:
> (a) The burden of demonstrating the invalidity of agency action is on
> the party asserting invalidity;
> . . . .
> (3) Review of agency orders in adjudicative proceedings. The court
> shall grant relief from an agency order in an adjudicative proceeding only if
> it determines that:
> . . . .
> (d) The agency has erroneously interpreted or applied the law;
> (e) The order is not supported by evidence that is substantial when
> viewed in light of the whole record before the court, which includes the
> agency record for judicial review, supplemented by any additional evidence
> received by the court under this chapter;
> . . . .
> (i) The order is arbitrary or capricious.

Under the potpourri of rules, we afford the GMHB deference, while the GMHB

grants the local government deference. Our job is easy if the GMHB affirms the local

county, but becomes problematic, because of the rival review standards, if the GMHB reverses the local entity.

We conclude the GMHB gave Spokane County sufficient deference when it found amendment 11-CPA-05 noncompliant with policy UL.2.16. The Spokane County Board of Commissioners failed to inform anyone what constitutes "near" under its comprehensive plan policy that requires medium density housing to be near open space or commercial zoning. The record revealed the absence of this desired nearness. The undisputed evidence showed that the Douglass land lacks good access to a major arterial. The Spokane County Board of Commissioners' action conflicted with its own planning commission's findings and recommendations. The GMHB's finding of noncompliance is supported by the evidence or lack thereof before it. The GMHB's order was neither arbitrary nor capricious. We reverse the trial court's ruling to the extent that the trial court reversed the GMHB's ruling concerning policy UL.2.16.

Issue 4: Whether the GMHB erred when ruling that amendment 11-CPA-05 is inconsistent with Spokane County's comprehensive plan policy UL.2.20?

Answer 4: Yes.

Spokane County's comprehensive plan urban land use policy 2.20 requires Spokane County to: "Encourage new developments, including multifamily projects, to be arranged in a pattern of connecting streets and blocks to allow people to get around easily by foot, bicycle, bus or car. Cul-de-sacs or other closed street systems may be

appropriate under certain circumstances including, but not limited to, topography and other physical limitations which make connecting systems impractical." AR at 248. The Spokane County Board of Commissioners failed to enter a finding of fact regarding compliance with policy UL.2.20.

In its findings and conclusions, the GMHB focused on the ability of pedestrians and bicyclists to access the proposed development from either Five Mile Road or Waikiki Road and the danger of Five Mile Road and the proposed internal access road to Waikiki Road. The GMHB thereby misapplied UL.2.20. The GMHB's concerns do not relate to UL.2.20. By its express terms, UL.2.20 addresses the internal arrangement of streets within a new development. The diagram that accompanies UL.2.20 bolsters this reading. The diagram focuses on internal arrangement.

The Neighborhood Association argues that the proposed comprehensive plan map amendment established that the site is not arranged in a pattern of connecting streets and blocks, rather it is arranged in a cul-de-sac pattern of unconnected streets disfavored by policy UL.2.20. This argument fails to note the second sentence of the policy, which permits cul-de-sacs under circumstances of difficult terrain. Furthermore, the GMHB either did not address this argument or, if it did, made no finding of a lack of connecting streets. The record does not even show the Neighborhood Association forwarding the argument to the GMHB. The GMHB did not hold amendment 11-CPA-05 to thwart policy UL.2.20 on this ground.

46

Our review of an administrative decision is limited to a review of the record

below. *Pierce County Sheriff v. Civil Serv. Comm'n for Sheriff's Emp. of Pierce County*,

98 Wn.2d at 693-94 (1983). A corollary to this rule is that we do not address arguments

not raised below. We will not decide an appeal from an administrative agency when no

argument or evidence was presented to the agency concerning the issue. *Int'l Ass'n of*

*Firefighters, Local No. 469 v. Pub. Emp't Relations Comm'n*, 38 Wn. App. 572, 579, 686

P.2d 1122 (1984).

In *Spokane County I*, 173 Wn. App. at 341-342, we discussed UL.2.20 without

holding that the policy applies only internally. Instead, our opinion includes a discussion

about connections outside the development. We did not rest our decision, however, on

such a reading of UL.2.20, but rather held any violation of UL.2.20 was unimportant at

the zoning amendment stage since transportation elements would be addressed at project

permitting stage. This ruling is an additional reason for holding that amendment 11-

CPA-05 does not violate Spokane County comprehensive plan policy UL.2.20. Douglass

has yet to propose a plat.

We affirm the trial court to the extent the trial court reversed the GMHB's ruling

that amendment 11-CPA-05 violated policy UL.2.20. The GMHB's ruling was likely

based on an erroneous interpretation of the policy. Evidence does not support the

GMHB's ruling.

Issue 5: Whether the GMHB committed error when it ruled that amendment 11-

47

No. 31941-5-III
*Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*

CPA-05 contravenes Spokane County comprehensive plan policy CF.3.1?

Answer 5: Yes.

Under Spokane County Comprehensive Plan Capital Facilities and Utilities (CF) policy 3.1: "Development shall be approved only after it is determined that public facilities and services will have the capacity to serve the development without decreasing levels of service below adopted standards." AR at 276. In its finding of fact 25, the Spokane County Board of Commissioners found the Douglass property rezone consistent with CF.3.1 because the property is located "in an area where adequate public facilities and services can be provided without decreasing levels of service." AR at 13. In ruling Resolution 11-1191 and amendment 11-CPA-05 inconsistent with policy CF.3.1, the GMHB focused on local schools being at capacity and the costs those schools would incur to bus children, who cannot safely walk along Five Mile Road.

We reverse this ruling of the GMHB for two reasons. First, adequacy of facilities under policy CF.3.1 is determined at the project permit stage. Second, there is a lack of evidence of decreasing education services below adopted standards. The GMHB's ruling is contrary to law and not supported by substantial evidence.

The GMHB ruling and the Neighborhood Association argument clashes with our decision in *Spokane County I*, 173 Wn. App. at 335. Comprehensive plan policy CF 3.1 regulates the conditions for "approval of a development." But a zoning "amendment is not a development proposal." *Spokane County I*, 173 Wn. App. at 335. The rezone did

48

not authorize Douglass to develop the land. Without a specific project proposal, Spokane County cannot determine whether the proposed development would overextend extant public facilities and services.

*Spokane County I*, did not directly address Spokane County comprehensive plan policy CF.3.1, but rather addressed transportation goals and policies that required transportation system improvements concurrent with new development. Nevertheless, the decision's reasoning applies in the context of policy CF.3.1, since the policy refers to the time of development. We have held the time of development to be the project permitting stage not the time of a rezone. The Neighborhood Association seeks to distinguish *Spokane County I* from this appeal on the basis that CF.3.1 uses the word "shall," and the transportation policies addressed in *Spokane County I* lacked this imperative. Regardless, *Spokane County I* holds that development occurs at the permitting stage.

Moving to the second basis of our reversal, in finding the comprehensive plan amendment violative of policy CF.3.1, the GMHB relied only on the lack of capacity of schools. Policy CF.3.1 demands that facilities have the capacity to serve the development without decreasing levels of service below adopted standards. Evidence supports the GMHB's finding that schools are at capacity and that schools incur additional busing costs due to Five Mile Road's current condition. Nevertheless, the GMHB did not find that the Douglass development would cause a decrease in the level of school services

49

below adopted standards. The GMHB heard no evidence of any education standards, let alone a prospective breach of the standards. The school district's director of facilities wrote that Douglass' request for a change in land use would have "an impact on schools." AR at 343. But he did not elaborate on the anticipated impact. Likewise, while busing children is expensive, nothing in the record shows busing would drop below an adopted standard or the cost of busing would reduce other school standards.

The Neighborhood Association raises the legitimate concern that Spokane County concurrency regulations do not allow it the opportunity to complain about the adequacy of school, fire protection, and police services at the time that Douglass applies for a project development permit. In forwarding this argument, the Neighborhood Association moves beyond the GMHB ruling, which limited itself to school services, and worries about the potential adequacy of police services, fire protection services, and solid waste disposal, in addition to schools.

Concurrency is the prospective availability and adequacy of utilities, public facilities, and public services at the time when residents begin to occupy a new housing development. Spokane County Code (SCC) 13.650.102 distinguishes between direct and indirect concurrency. Direct concurrency requirements apply to transportation, public water, and public sewer facilities and demand that the developer show, when applying for a project permit, that such facilities will be adequate. SCC 13.650.102(2). Indirect concurrency requirements apply to fire protection, police protection, parks and recreation,

libraries, solid waste disposal, and schools. SCC 13.650.102(3). Indirect concurrency is determined annually during the update of the county's capital facilities plan. SCC 13.650.102(3).

Despite these differences in concurrency evaluations, we find the Neighborhood Association's argument wanting. The Neighborhood Association fails to explain why it cannot register its concerns during the annual update of the capital facilities plan. More importantly, *Spokane County I*, held that "development" in this context means the time of permit application rather than a rezone. The Neighborhood Association has not shown this holding in *Spokane County I*, to be incorrect or harmful, as to overcome the principle of stare decisis.

The Neighborhood Association notes that the Spokane County comprehensive plan uses the term "development" to all stages of the process of developing. The Neighborhood Association also emphasizes that "development" is not defined in policy CF.3.1. From this observation, the Neighborhood Association argues that all potential problems with roads, schools, and other facilities should be resolved before the rezone and not await the building process. Here again, the Neighborhood Association goes beyond the ruling of the GMHB and even beyond its argument regarding indirect concurrency limitations. The Neighborhood Association also does not show that the term "development" as used in CF.3.1 means a rezone or demands resolving facility questions before a rezone.

51

The Spokane County Board of Commissioners found that the Douglass land "is located in an area where adequate public facilities and services can be provided without decreasing levels of service." AR at 750. The Neighborhood Association argues that this finding is different from a finding that public facilities and services will have the capacity to serve the development without decreasing levels of service below adopted standards as required by policy CF.3.1. The Neighborhood Association emphasizes the lack of planning to ensure a continued acceptable level of services. Nevertheless, the Neighborhood Association carried the burden before the GMHB to show a likely drop of services below accepted standards. The Neighborhood Association failed to present evidence of this drop, let alone the applicable standards.

Issue 6: Whether the GMHB committed error when ruling that amendment 11-CPA-05 disregards SCZC section 14.402.040?

Answer 6: No.

Spokane County Zoning Code [SCZC] 14.402.040 reads, in relevant part:

> The County may amend the Zoning Code when one of the following is found to apply.
> 1. The amendment is consistent with or implements the Comprehensive Plan and is not detrimental to the public welfare.
> 2. A change in economic, technological, or land use conditions has occurred to warrant modification of the Zoning Code.

Clerk's Papers (CP) at 521.

The Spokane County Board of Commissioners found:

20. The proposed amendment [amendment 11-CPA-05] is consistent with the criteria for a zone reclassification under Section 14.402.040 (1) and (2) of the Spokane County Zoning Code as the proposed amendment implements the goals and objectives of the Comprehensive Plan and the subject area has experienced a change of conditions as evidenced by development of duplex dwelling units in proximity to the subject property thereby creating a mix of land use types and densities in the Urban Growth Area boundary.

CP at 522 (footnote omitted). In reversing Spokane County, the GMHB reasoned:

The development of duplex dwelling units in proximity to the subject property cannot constitute a change in circumstances under SCZC 14.402.040(2) since duplexes are already a permitted use in the "Low Density Residential" zone and so there is no need to change the zoning to accommodate duplexes.

Moreover, if zoning classifications could be readily changed whenever there are cyclical market fluctuations (as advocated by applicant's engineering consultant), then property owners could lose the reliance value of the zoning code and thereby frustrate the investment backed expectations of homeowners.

AR at 1029 (footnote omitted). We ask whether amendment 11-CPA-05 satisfies either clause 1 or 2 of the zoning code section, or at least whether the Spokane County Board of Commissioners reasonably found that the zoning change satisfied one of the clauses.

In its finding 20, the Board of Commissioners referred to the goals and objectives of the comprehensive plan. Nevertheless, the comprehensive plan contains no goals or objectives labeled as such. SCZC 14.402.000 requires consistency with the comprehensive plan, but does not mention any "goals" or "objectives" of the plan. We conclude that the Board of County Commissioners must have referred to the visions and policies of the comprehensive plan in its finding 20. As we analyzed above, amendment

53

11-CPA-05 thwarts comprehensive plan policy UL.2.16.

We question whether one inconsistency with the many policies of the comprehensive plan is sufficient to declare the amendment as a whole disobedient to SCZC section 14.402.040(1) but we need not resolve this question. Under clause 1 of the code section, the zoning amendment must be consistent with the comprehensive plan and not detrimental to the public welfare. The Spokane County Board of Commissioners made no finding of an absence of a detriment. Strong evidence showed the zoning change harmed the public, particularly neighbors, and benefited only Douglass. The Spokane County Planning Commission found the zoning change to adversely impact the public interest, and the Board of Commissioners registered no disagreement. Therefore, amendment 11-CPA-05 does not satisfy SCZC section 14.402.040(1).

The Spokane County Board of Commissioners' finding 20 supports the conclusion that the Board of Commissioners found a sufficient change in land use conditions to warrant the zoning amendment. According to the Board of Commissioners, the subject area had experienced a change of conditions by reason of development of duplex dwelling units in proximity to the subject property thereby creating a mix of land use types and densities. Douglass had argued that changed economic circumstances warranted the amendment. The Board of Commissioners did not rely on any change in the economy.

We find ambiguity in the language of and confusion between the GMHB's and

Board of Commissioners' respective interpretations of SCZC 14.402.040(2). The GMHB's ruling implied that the GMHB believed the change in land use conditions in the area referred to in SCZC 14.402.040(2) is a change consistent with the zoning change sought. In other words, Douglass or the Board of Commissioners, according to the GMHB, needed to show that the new land uses in adjoining lands were other medium density uses, not simply duplexes allowed in a low density zone. Although duplexes may have been recently built on the adjoining land, duplexes were always permitted, and, in fact, remain permitted on the Douglass property. SCZC 14.402.040(2) could also be read to require the change in conditions to occur inside the proposed zoning change boundary, rather than outside the rezone as concluded by the Board of Commissioners. Finally, the section could be read to require the change in land use conditions are conditions in the adjoining land such as uses not already allowed in the neighborhood. In other words, the adjoining land also needed a zoning change.

We would defer to the Spokane County Board of Commissioners' reading of its own code section, but we do not consider the resolution of the various readings of SCZC 14.402.040(2) helpful. Regardless, Spokane County, the GMHB, and this court must still determine whether some change in land use conditions merits the rezone. We conclude SCZC 14.402.040(2) does not refer to any change in conditions, otherwise there would be no limit to the circumstances under which the code section permits a rezone. No matter how small or large the change, no matter how inconsistent or consistent to land uses in

the rezoned area the change in adjoining land use may be, the county could justify the adopting of any change in zoning. For example, the section should not be read to include the planting of a garden on adjoining land, which theoretically is a change in land use conditions. We conclude a reasonable reading of SCZC 14.402.040(2) requires us to determine whether the change in land use conditions necessitates a rezone or the change in conditions is close in nature to the rezone uses such that the rezone is a natural extension of the change.

We find compelling the Neighborhood Association's argument that the building of duplexes in the neighborhood should not warrant the change in zoning the Douglass property from low density to medium density in neighboring property, because a multifamily project on the Douglass land significantly increases the number of dwellings per acre compared to duplexes. By way of illustration, under low density zoning, Douglass' Redstone plat contemplated 38 lots, 26 for single family dwellings and 12 for duplexes for a total of 50 dwelling units. Even if Douglass placed duplexes on each lot, the total units would be 78. On the other hand, proposed medium density zoning would allow 200 dwelling units, more than double the units in low density. The multifamily medium density project would also generate a significant increase in need for parking. The nearby duplexes therefore are not the type of land use change that generates a need for a rezone on the Douglass land. Multifamily units on the Douglass land are not a natural extension to the neighborhood duplexes. The rezone does not preserve the

56

character of the extended neighborhood.

Spokane County argues that economic circumstances impacting the area in 2010 to 2011 rendered the property as zoned low density fiscally impractical. Nevertheless, the Board of Commissioners did not justify the rezone on economic changes. The County Board of Commissioners, rather than this appellate court, should be the body to make the original finding of changes in economic conditions meriting a rezone.

Spokane County may argue on appeal that the change in land use conditions that merits the rezone is the change that occurred by reason of the comprehensive plan map amendment, by which the county rezoned the Douglass property from low density to medium density use. Assuming the county forwards this argument, we reject it. The rezone and the comprehensive plan amendment were essentially the same action by the Board of Commissioners. One should not justify the other.

We conclude the GMHB gave Spokane County sufficient deference when it found amendment 11-CPA-05 noncompliant or violative of SCZC 14.402.040(2). Substantial evidence failed to show a change in land use conditions meriting a rezone for the Douglass land. The Spokane County Board of Commissioners failed to address whether a zoning amendment furthers or harms the public welfare. The planning commission found the rezone detrimental. The GMHB's order was neither arbitrary nor capricious. We reverse the trial court's ruling to the extent that the trial court reversed the GMHB's ruling concerning SCZC 14.402.040(2).

We question whether the GMHB holds power to rule a comprehensive plan amendment noncompliant with a county's zoning code. RCW 36.70A.300 grants authority to the GMHB to review a plan's compliance only with the GMA, the Shoreline Management Act, and the State Environmental Policy Act. RCW 36.70A.280 grants the GMHB authority to address whether a development regulation complies with the GMA and a zoning ordinance is a development regulation. This authority may not extend, however, to determining whether a county complies with its internal code when adopting a zoning change. Nevertheless, Spokane County has not argued that the GMHB may not find its plan amendment noncompliant with the county code, or that the GMHB can use such noncompliance to form the basis for a determination of invalidity of the plan amendment.

Issue 7: Whether the GMHB committed error when it ruled Spokane County amendment 11-CPA-05 invalid under the GMA?

Answer 7: We do not answer this question. Since we have both reversed and affirmed several determinations of noncompliance made by the GMHB, we remand to the GMHB to readdress whether amendment 11-CPA-05 should be invalidated.

We have reversed the GMHB on two of the four grounds upon which it invalidated amendment 11-CPA-05. We must now determine what remedy or remedies are appropriate. In particular, we must ask whether we should affirm the GMHB's declaration of invalidity of the plan amendment now that there are only two

58

noncompliance grounds: UL.2.16 and SCZC section 14.402.040.

A number of GMA sections address remedies available to the GMHB. Those remedies include a two-step process. If the GMHB finds a county action to be noncompliant with the GMA, the GMHB will first enter an order of remand for the county to comply. Second, the GMHB will determine whether to invalidate the action such that the action lacks force during the time of remand. Presumably, the purpose of invalidity is to prevent owners and developers from gaining vested rights under the county action, such as a rezone, during the remand.

RCW 36.70A.300 reads, in relevant part:

> (1) The board shall issue a final order that shall be based exclusively on whether or not a state agency, county, or city is in compliance with the requirements of this chapter [the GMA], [the Shoreline Management Act, or the State Environmental Policy Act].
>
> . . . .
> (3) In the final order, the board shall either:
> (a) Find that the state agency, county, or city is in compliance with the requirements of this chapter.
> (b) Find that the state agency, county, or city is not in compliance with the requirements of this chapter . . . in which case the board shall remand the matter to the affected state agency, county, or city. The board shall specify a reasonable time not in excess of one hundred eighty days, or such longer period as determined by the board in cases of unusual scope or complexity, within which the state agency, county, or city shall comply with the requirements of this chapter. The board may require periodic reports to the board on the progress the jurisdiction is making towards compliance.
> (4)(a) Unless the board makes a determination of invalidity under RCW 36.70A.302, a finding of noncompliance and an order of remand shall not affect the validity of comprehensive plans and development

regulations during the period of remand.

RCW 36.70A.302(1) reads:

> (1) The board may determine that part or all of a comprehensive plan or development regulations are invalid if the board:
> (a) Makes a finding of noncompliance and issues an order of remand under RCW 36.70A.300;
> (b) Includes in the final order a determination, supported by findings of fact and conclusions of law, that the continued validity of part or parts of the plan or regulation would substantially interfere with the fulfillment of the goals of this chapter; and
> (c) Specifies in the final order the particular part or parts of the plan or regulation that are determined to be invalid, and the reasons for their invalidity.

RCW 36.70A.302(1) refers to a "comprehensive plan" and "development regulations." At issue in this appeal is a plan amendment. The GMHB declared the plan amendment and not the underlying comprehensive plan to be invalid. The GMHB did not invalidate the entire Spokane County Resolution 11-1191, which contained comprehensive plan amendments, but only that portion of the resolution involving the rezone of the Douglass land. The GMHB's singling out of amendment 11-CPA-05 for invalidity, rather than declaring the underlying comprehensive plan invalid or the entire Resolution 11-1191, makes sense.

In this case, the GMHB invalidated amendment 11-CPA-05 for substantially interfering with GMA goals (1), (3), and (12), of the thirteen GMA goals found in RCW 36.70A.020. The relevant subsections reads:

(1) Urban growth. Encourage development in urban areas where adequate public facilities and services exist or can be provided in an efficient manner.

. . . .

(3) Transportation. Encourage efficient multimodal transportation systems that are based on regional priorities and coordinated with county and city comprehensive plans.

. . . .

(12) Public facilities and services. Ensure that those public facilities and services necessary to support development shall be adequate to serve the development at the time the development is available for occupancy and use without decreasing current service levels below locally established minimum standards.

We agree with the GMHB that amendment 11-CPA-05 interferes with UL.2.16 and SCZC section 14.402.040. This agreement supports a conclusion that amendment 11-CPA-05 interferes with the identified goals of the GMA. Nonetheless, we disagree with the GMHB that amendment 11-CPA-05 contradicts comprehensive plan polices UL.2.20, and CF.3.1. This disagreement undercuts the GMHB's conclusion that amendment 11-CPA-05 interferes with the stated GMA goals.

We wrote in *Spokane County I*:

In identifying 13 goals to guide local comprehensive planning, the legislature itself cautioned that it was not listing goals in order of priority and that its identification of the goals "shall be used exclusively for the purpose of guiding the development of comprehensive plans and development regulations." RCW 36.70A.020. Goals considered by local governments in comprehensive planning may be mutually competitive at times. For that reason, if a map amendment meaningfully advances other comprehensive plan goals and policies, a finding by the growth board that it fails to advance another—if it fails to advance, for example, a goal of encouraging high density residential development on sites having good access to a major arterial—that alone cannot be an invalidating

61

inconsistency. The weighing of competing goals and policies is a
fundamental planning responsibility of the local government.

173 Wn. App. at 333 (citation omitted). Based on this passage in *Spokane County I*, we

would defer to any reasonable weighing of the goals and policies conducted by the

Spokane County Board of Commissioners. While the Board of Commissioners declared

amendment 11-CPA-05 consistent with the goals of the GMA, the Board of

Commissioners never provided any reasoning behind this declaration. More importantly,

the Board of Commissioners never recognized the rezone's inconsistency with

comprehensive plan amendment UL.2.16 or the violation of SCZC section 14.402.040.

Thus, the Board of Commissioners never weighed whether countervailing goals and

policies of the GMA trump the clash with GMA goals and polices resulting from

inconsistencies with comprehensive plan policy UL.2.16 or the violation of SCZC section

14.402.040.

RCW 34.05.574, a section of the Administrative Procedure Act, controls our

review of the GMHB's decision. This statute reads:

> (1) In a review under RCW 34.05.570, the court may (a) affirm the
> agency action or (b) order an agency to take action required by law, order
> an agency to exercise discretion required by law, set aside agency action,
> enjoin or stay the agency action, *remand the matter for further proceedings*,
> or enter a declaratory judgment order.
> . . . .
> (4) If the court sets aside or modifies agency action or remands the
> matter to the agency for further proceedings, *the court may make any
> interlocutory order it finds necessary to preserve the interests of the parties
> and the public, pending further proceedings or agency action.*

(Emphasis added.)

Based on our authority under RCW 34.05.574, we remand this case to the GMHB for proceedings consistent with this opinion. The GMHB should reweigh the extent of the interference by amendment 11-CPA-05 with the goals and policies of the GMA, based on the amendment's noncompliance with only comprehensive plan policy UL.2.16 and SCZC section 14.402.040.

We order that the GMHB's declaration of invalidity remain in effect during the additional review by the GMHB. Without this declaration of invalidity, Douglass might gain vested rights to develop its property within the limited strictures of medium density zoning. To preserve the interests of the parties, Douglass should not gain any vested rights during the additional review.

## CONCLUSION

We hold the GMHB possessed subject matter jurisdiction to review the concurrent amendment and resolution. We affirm in part and reverse in part the superior court's substantive ruling that reverses the GMHB and reinstates Spokane County Comprehensive Plan amendment 11-CPA-05. We hold amendment 11-CPA-05 inconsistent with comprehensive plan policy UL.2.16 and SCZC section 14.402.040, but consistent with comprehensive plan policy UL.2.20 and CF.3.1. We remand to the GMHB for further proceedings consistent with this opinion.

No. 31941-5-III
*Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.